## Heinrichs v. Polking, et al.

(Decided October 14, 1919.)

## Appeal from Kenton Circuit Court.

1. Adverse Possession—Occupancy Based on Mistake.—Where a proprietor occupies lands, beyond the boundaries of his deed by mere mistake as to where the line is, and has no intention of claiming lands, which do not belong to him as his own, but intends to claim to the true line only, wherever it may be, his holding is not adverse to the true owner; but the fact that the occupation is based on a mistake does not prevent the holding from being adverse if the occupant claims and intends to hold the land as his own and believes and claims the mistaken line to be the true line and evinces no intention of surrendering the land held by him.

2. Adverse Possession—Constructive Possession.—One who enters upon a tract of land, claiming ownership under a deed and with the intention to possess it all, is in the constructive, actual possession of the land to the extent of the boundaries described in his deed, except such portions of it as may be in the actual possession of another, but one entering under a deed, is not in possession of any more of the land described in the deed than he intends to take possession of.

3. Adverse Possession—Enclosures—Character of.—For one to be in adverse possession of lands not embraced by his title paper, but embraced by the deed of an adjoining proprietor who is in possession of his tract, under his deed, the one claiming by adverse possession must have the lands, claimed by him adversely, surrounded by an enclosure which is visible and notorious and of such character as to give notice to the true owner of his hostile claim, but the enclosure need not necessarily be a fence.

STEPHEN L. BLAKELY for appellant.

F. W. SCHMITZ for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This controversy relates to the ownership of a small body of land, containing 3.3 acres. The controversy arose from the following facts and circumstances. In 1890, in a suit for the settlement of the estate of George Winston, deceased, certain lands, belonging to the estate of the decedent, were ordered to be sold under a judgment of the Kenton circuit court. The lands were ordered to be sold in lots, and it seems, that prior to the sale, they had been divided into lots and plats made, showing the boundaries and quantity of land contained in the respective lots.

Lot number three was bounded on the east by the DeCoursey turnpike. The accompanying plat illustrates the situation. Lot number three is represented by the lines, indicated by the letters, A, B, C, D, E, H, G, T, and F, and back to A. The DeCoursey pike lies between the lines indicated by the letters B, C, D, E and H, and the figures 1, 2, 3, 4, and 5. Lot number three, was sold in two parcels, the plat of which described the northernmost parcel as containing 21.9 acres, and described by the lines, which are indicated by the letters A to B, B to C, C to D, D to E, E to F, and F to A. The southernmost parcel was platted as containing 14.9 acres, and bounded by the lines, E to H, H to G, G to F, and F to E. The sale was made by the master commissioner of the court upon the turnpike, at the point indicated by letter, E, and in full view of the two parcels.

Within five or six days after the sale, the purchasers were put into possession of the lands purchased by them, respectively. The offer to sell, was at so much per acre, and B. Polking, who was present at the sale, became the purchaser of the northernmost parcel, while William Jones became the purchaser of the southernmost parcel, and each of them, within less than ten days after the sale, entered into possession of the portions purchased by them, except as will be, hereinafter, stated. The deeds were not made until about one year after the date of the sale. The deed, executed to Polking, described his purchase as embracing the lands described by the letters, A to B, B to C, C to D, D to E, E to F, and F to A, while the deed to Jones, described the lands, purchased by him, as being embraced within the lines, E to F, F to T, T to G, G to H, and H to E, though it does not appear, that either Polking or Jones ever discovered, that the deeds described their division line as being represented by the line, from E to F. Within a few days after the date of the sale when Polking entered into possession of the lands, purchased by him, he took actual possession, not only of the lands embraced within the deed which was thereafter made to him, but, with the acquiescence and consent of Jones, took possession also, of the lands embraced within the lines, E to F, F to T, and T to E. This boundary contains the 3.3 acres, which are the subject of controversy in this suit. Jones entered upon the tract, purchased by him, at the same time, that Polking entered

upon the lands, purchased by him, but within a few days, Polking and Jones went over the line from E to T, and placed a stone at "T," and one or more stones upon the line from T to E, thereby designating it as the division line between them.

In autumn of the year, 1890, Jones dug a trench from E in the direction of the point, T, along the line from E to T, and which extended about half of the distance from E to T, for the purpose of preventing the drain of the waters upon his premises, and Polking erected a fence along the line, from E to T on the bank of the trench, the fence extending from E over a greater part of the distance between the two points, in the direction of the point, indicated by the letter, T. Polking was a truck gardener, and cultivated the strip of land, embraced within the letters, E to F, F to T, and T to E, and up to the line from E to T, in corn, potatoes, strawberries, and other crops, during each year up to the time of his death in 1901, and, thereafter, the same was cultivated by his devisee up until the bringing of this suit.

Jones cultivated upon the south side of the line from E to T, up to that line, but never, at any time, claimed to be the owner of any land on the north side of that line. The Polking residence was upon the north side of the line from E to F, but very close thereto, and in building an addition to the residence, one room to the house, was built so that all except two feet of it was upon the south side of the line, from E to T. When a telephone company desired to erect a telephone line across the property of Polking and Jones, the Polkings would not consent, that the poles should be placed upon their premises, but might be erected along the line, from T to E, which was done.

In 1912, Jones sold his land to the appellant, John Heinrichs and conveyed same to him, by deed, but described the land, sold, by the same description as that contained in the deed of the master commissioner of the circuit court to him, which included the land in controversy. Heinrichs had, for many years, resided in the same neighborhood, and was acquainted with the line, from E to T, as the division line between the lands of Polking and the lands of Jones, which he purchased, and made the purchase of Jones and accepted the deed for it, under the belief, that the northern boundary of the land, conveyed to him, was a line from E to T.

Thereafter, having a survey made of the boundary of land described in the deed from Jones to him, he discovered, that it included the land in controversy, when he immediately undertook to take possession of the land, and to have a fence erected upon the line, from E to F. This was resisted by the Polkings and resulted in this litigation.

The appellee, Mary Polking, claimed to be the owner of the 3.3 acres of land, by adverse possession of her devisor and herself continuously, for a length of time, greater than the statutory period, which appellant denied, and this issue, being submitted to a jury, it sustained her contention, by its verdict, and the court adjudged, that the appellant's petition be dismissed, and appellees' title to the land, be quieted, and from this judgment, the appellant has appealed, and insists, that the judgment should be reversed, because the facts, developed in the evidence, fail to support the claim of adverse possession by appellee, and that the court erred in its instructions to the jury, upon that issue, and erred in overruling his motion to direct a verdict for him. The theory of the case contended for by appellees, and the evidence offered by them, tended to support their contentions, that when the sale of the lands was made by the commissioner, that Polking and Jones were both present, and when the lands were offered for sale, that inquiry was made of the commissioner, as to the location of the line between the portions thereafter purchased by Polking and that purchased by Jones, when the commissioner, and others in his presence, pointed out a stake at "E," and other stakes along the line from "E" to "T," as being the line of division and that the commissioner represented that stakes indicated the line to its end; that in a few days, thereafter, Polking and Jones, together, went over the line and found the stakes, and set stones, at several of them, in place of the stakes, and thereafter for over twenty years, the Polkings used and cultivated the lands up to the line, "E" to "T," under claim, that such was the true line of division, and asserted and exercised every right of ownership of the land to the north of that line, while Jones claimed to own, and exercised dominion over the lands to the south of that line, only; and that they were in the actual adverse possession of the lands, in dispute, at the time same were conveyed by Jones to

appellant, and for such reason, the conveyance to appellant by Jones, was champertous and void. The contention of appellant, is, that Polking took possession of the lands, in dispute, by mistake, and without any intention of holding and claiming beyond the true line and with the intention of claiming to the true line, only, wherever it might be, and, for such reason, his holding of the lands, in controversy, was not adverse, and for such reason, the statute of limitation never commenced to run, in his favor; and, further, that, being an adjoining proprietor, his acts of ownership upon the land, in controversy, were not evidences of an adverse holding, unless he had the lands within his encroachment enclosed. It may be conceded, that where a proprietor of lands, occupies lands, beyond the boundaries of his deed, by a mere mistake, as to where the line is, and has no intention of claiming lands, which do not belong to him, as his own, but, his intention is to claim only to the true line, whereever it may be, his holding is not adverse to the true owner.

Turner v. Morgan, 158 Ky. 511; Cuyler v. Bush 84 S. W. 579; Rudd v. Monarch, K. L. R. 893; Crutchlows v. Beatty, 15 K. L. R. 464; Pollitt v. Hart, 15 K. L. R. 227; Holmes v. Herringer, 12 R. 22; Scheible v. Hart, 11 K. L. R. 607; Rugles v. Fannan, 10 K. L. R. 687; Hunter v. Clensiman, 6 B. M. 463; McKinney v. Mc-Kinney, 1 A. K. M. 460; Houston v. Kidwell, 4 A. K. L. 425. The intention, with which the occupation is made always determines and fixes its character as being adverse or otherwise, and not the fact, that the occupation is based upon a mistake, or in other words, the fact, that the occupation is based upon a mistake, does not prevent it from being adverse, if the intention is to claim and hold the land, as one's own, up to a mistaken line, if the occupant claims the line to be the true one, and that his deed embraces the land. As said in Turner v. Morgan, *supra*: ''But there are two classes of these cases where possession is taken of the land of another under a mistaken belief as to the true location of the line; one where the claimant by his claiming concedes that there may be a mistake and intends to claim only such land as really belongs to him and to surrender any lands held by him not on his side of the true line; and under this rule such holding is not adverse. The other is where the claimant

by the nature of his claiming, does not concede that there may be a mistake as to the location of the true line, and evinces no intention of surrendering any land held by him, but, claims it as his own; and under this rule, the holding is adverse.'' If it is conceded, that Polking, and after him, his devisee, in possession of the land, claimed the disputed land under a mistaken belief, that the line from ''E'' to ''T'' was the true line, yet, he claimed the land up to that line, as his own, and there is nothing in the record, to indicate, his intention to claim only to the true line, wherever it might be, because there was no evidence to support the view, that he had any doubt as to the true location of the line, but, believed and claimed, that the true line was the line, from ''E'' to ''T.'' Under the above stated rule, Polking's holding was adverse to Jones, as Polking claimed, that the line from ''E'' to ''T'' was the true line, and of this, he seems to have had no doubt, and the land between the line, ''E'' to ''F'' and ''E'' to ''T,'' he claimed, used and held as his own, to a well defined and visible boundary, and neither he nor his successor in title ever evinced, by any declaration or act, that either of them had any doubt, of its being the true line, or of conceding its ownership to any one else, if the true line was discovered to be elsewhere.

The contention, that Polking was not in adverse possession of the disputed land, because it was embraced, in the boundaries of the deed, under which Jones held his lands, and that Jones was in the actual possession of the boundary for which he held a deed, and was therefore, at all times, in the actual possession to the extent of the boundaries of his title paper, is not tenable, under the facts of this case. While it is a general and well established doctrine, that one, entering into the actual possession of some part of a tract of land, for which he holds a deed, with the intention to possess it all, is in the actual possession of the tract to the extent of the boundaries described in the deed, but, this actual possession is confined to such portion of the boundary, as he intends to take possession of, and to such portion as is not in the actual possession of another. From the evidence, it is clear, that Jones never intended, by the entry under his deed, to take possession of the land, in dispute, and the appellant, by his entry under the deed from Jones, did not

acquire possession of the disputed land, because it was then in the actual possession of another. Neither do we think, that because Polking nor his devisee ever enclosed all of the disputed land with a fence, appellees fail in the evidence of an adverse possession, although some language of several opinions of this court, rendered in former times, would seem to indicate an adherence to that doctrine, when adverse possession is claimed by one adjoining proprietor as against another. This view of the law probably had its origin in controversies, growing out of mixed possessions, and in instances, where statutes required inclosures to give effect to an adverse holding. In a case like the instant one, there is no reason to require an inclosure of the land, in dispute, to maintain an adverse possession. If the land is claimed and held to a well defined boundary, openly, notoriously, adversely, and continuously for the statutory period, it is sufficient. The boundary must be well defined. As said in Abbot v. Perkinson, 144 Ky. 499, which was a contest between adjoining proprietors: "To illustrate, if land is cultivated under a claim of right for fifteen years or more to a boundary well marked by cultivation, the adverse holding will extend to the limits of the ground so cultivated as effectually as it would to a fence." Lemoyne v. Rountree, 135 Ky. 40; Webb v. Haynes, 9 B. M. 388; Kantz v. Hatfield, 30 K. L. R. 592; Barr v. Potter, 22 K. L. R. 414.

Truly, an inclosure may be made otherwise than by a fence where the means used to make the inclosure constitutes a visible barrier, and of such character, as charges the owner with notice, that the occupant is holding the land, in hostility to his title, and adversely to all the world. The issue relating to adverse possession, was submitted to the jury, under instructions, of which only the appellees could complain.

The judgment is therefore affirmed.