## Bailey et al. v. Hall.

Nov. 19, 1943.

R. Kent Sampson for appellants.

M. F. Hall, Astor Hogg and W. A. Brock for appellee.

Opinion of the Court by Judge Sims—Affirming.

This action in ejectment was instituted by appellee, Sylvia Hall, plaintiff below, against O. B. Bailey and wife, Delena, to recover a small wedge-shaped strip of land located in the town of Harlan. The strip in dispute fronts about 7 feet on Ivy Street and extends northwardly some 200 feet to Mount Pleasant Avenue with a frontage on the latter of about 21 feet. The verdict was in favor of plaintiff, and from the judgment entered thereon defendants appeal.

On May 23, 1912, Josephine A. Combs caused to be recorded in the Harlan County Court Clerk's office a map showing a subdivision known as Ivy Hills. The Harlan County Realty Company soon thereafter acquired title to that portion of the subdivision embracing lots No. 8 to No. 11, inclusive, in block 5, section A. By deed of March 23, 1917, the realty company conveyed lots Nos. 8, 9 and 10 to W. W. Lewis and the only description contained in that deed of the property conveyed was by reference to the lots by their numbers on the recorded

plat. Defendants deraigned title to lot No. 10 through this Lewis deed. By deed of May 23, 1918, the realty company conveyed to James A. Walker the ''western 62½ feet of lot No. 11 in Block 5 in said addition to Harlan, said lot fronting 62½ feet on Ivy Street and running back to Mount Pleasant Avenue, the same width all the way.'' Plaintiff deraigned title to the western half of lot No. 11 through this Walker deed. Thus it is seen that the parties trace their title back to a common source, the Harlan Realty Company, and defendants have the first or oldest deed which gives them paramount paper title. Defendants also pleaded title by adverse possession and produce much proof in support thereof.

The real issue between the parties is the location of the east-west boundary line between lot No. 10 owned by defendants and the western half of lot No. 11 owned by plaintiff. Defendants introduced proof that the fence which they had constructed in April 1941, as the boundary line between their property and that of plaintiff, was erected in the same place where T. N. Hensley had constructed a division fence in 1920; that the line of the Hensley fence was plainly visible at the time the new fence was constructed, although in places it was down. Defendants further proved that from 1922 until this suit was brought in 1942, they had been in the adverse possession of their lot occupying it up to the fence between them and plaintiff, which fence was known as the Walker line or fence. Plaintiff's proof was equally as strong that there had never been a fence between the two lots until defendants erected one in 1941 and that plaintiff had possession of and occupied her lot up to what she contends is the correct division line between the two properties.

Plaintiff introduced her surveyor, John A. Creech, who testified that beginning at a known point, a steel pin set in the southwestern corner of lot No. 11, he established the true division line between plaintiff's and defendants' lots as beginning at a point in the north line of Ivy Street 125 feet from the steel pin and running N. 25-35 W. to Mount Pleasant Avenue. Lot No. 11 appears to be the most easterly lot in block 5, and J. H. Cornett, the owner of the easterly half of lot No. 11, testified that this steel pin is a recognized corner. Defendants introduced their surveyor, N. R. Denham, who testified that beginning at a known point, which we gather from the

record is a cross mark on a cliff which had been pointed out to the witness 21 years before by W. T. Rice, an old surveyor, he established the division line between these lots as beginning at a fence post in the south line of Mount Pleasant Avenue. which fence post is located N. 68-50 E. 110 feet from the northwest corner of lot No. 10 and running S. 14-25 E. 233 feet to a fence post in the north line of Ivy Street. Denham further testified that beginning at a stone which was set in the south line of Mount Pleasant Avenue by John Osborne, who helped Creech make the survey for plaintiff, and running with the division line S. 25-35 E. as it was run by Creech, the same passes through plaintiff's house. Thus we see the two surveyors differ widely as to where the true division line between lots No. 10 and 11 is located.

With the surveyors differing so greatly as to the location of this division line, and with the direct conflict in the evidence as to whether there had been a division fence between the properties, and as to whether defendants have been in adverse possession of their lot for more than 15 years up to the point where their proof shows the old fence had been until replaced by the one they erected in 1941, the court properly overruled defendants' motion for a directed verdict and submitted to the jury two questions: (a) The location of the division line; and (b) whether the defendants had the strip in controversy inclosed by a fence under a claim of ownership continuously for 15 consecutive years.

The first instruction reads: "If you believe from the evidence in this case that the land in controversy shown on the map introduced in evidence by the plaintiff is embraced within lot No. 11 shown on said map, you will find for the plaintiff, unless you find for the defendants under instruction No. 2."

As the surveyor Creech had made some red lines on plaintiff's map while testifying to indicate where he had located the division line between the properties, and had further so indicated defendants' fence, which red lines fell within the confines of lot No. 11 as shown on the map, defendants argue this first instruction amounted to a peremptory in favor of plaintiff. But it is apparent that the instruction did not tell the jury to find for plaintiff if it believed the strip of land in controversy was embraced within the red lines, but only to find for plaintiff if they believed the land in dispute was within the con-

fines of lot No. 11 shown on the map. The instruction would have been in better form had the court told the jury what was the division line as contended by plaintiff and what was the division line as contended by defendants and then instructed the jury to find which of the two was the true line. However, the instruction as given could not have been misunderstood by the jury and it was the one under which the verdict was returned.

Defendants' objection to the second instruction covering adverse possession is that it required the jury to believe defendants, or those under whom they claim, had the land in controversy "enclosed within a fence" under claim of ownership continuously for 15 consecutive years, insisting that they should not have been limited in asserting their adverse possession to inclosing the land by fence, but that the inclosure may be otherwise than by fence where the means used made the inclosure a visible barrier and gave the owner notice of their hostile claim, citing Heinrichs v. Polking, 185 Ky. 433, 215 S. W. 179, and Reichert v. Ellis Ferry Co., 184 Ky. 150, 211 S. W. 403. These authorities do say it is unnecessary to inclose land by a fence in order to hold it adversely. But in the instant case defendants' testimony was that they and their predecessors in title had the disputed land under fence in their possession under claim of right for more than the statutory period. Therefore, the instruction was correct under defendants' proof. We have often written that instructions must be based upon the evidence adduced in support of the issues raised by the pleadings. Hess' Adm'r v. Louisville & N. R. Co., 249 Ky. 624, 61 S. W. (2d) 299; Nehi Bottling Co. v. Flannery, 264 Ky. 68, 94 S. W. (2d) 297. As defendants' proof showed they had inclosed by fence the land they claimed to hold by adverse possession, the court made no error in the instruction in limiting their adverse possession to the land they claimed to have had under fence.

Complaint is made by defendants that the court erred many times in admitting incompetent evidence offered by plaintiff and in rejecting competent evidence offered by defendants. It would consume considerable space if we analyzed all the exceptions taken by defendants to the ruling of the court on evidence which are discussed in their brief. Let it suffice to say that in several instances the exceptions were well taken and that the rulings of the judge were erroneous. However, we do not

regard such errors as prejudicial to defendants' substantial rights, therefore we refuse to reverse thereon. Civil Code of Practice, Sections 134 and 338. Jefferson Garage v. Salatin, 233 Ky. 686, 26 S. W. (2d) 525. To illustrate; the court ruled that defendants could not prove by their surveyor, Denham, that plaintiff's map was inaccurate, since it was a recorded instrument. Doubtlessly the court confused for the moment the meaning of KRS 61.060 which forbids the official acts of an officer about which he is required by law to make a certificate to be called in question except in a direct proceeding. It is obvious this statute has no application here and the court must have realized it because he permitted testimony to be introduced by defendants that the map was inaccurate regardless of the ruling just mentioned.

We find no errors in the record which are prejudicial to defendants' substantial rights, therefore the judgment is affirmed.