## Garthwaite v. Harges et al.

Dec. 18, 1945.

Wallace A. McKay and John R. Whitlow for appellant.

Hardy & Logan for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK— Affirming.

There is involved in this controversy a strip of land 11 feet in width and 43 feet in length which lies at the rear of a lot owned by the appellant, and at the rear of one owned by the appellees. The appellant purchased her lot in 1944. She instituted the action wherein she charged that the appellees were wrongfully claiming the strip of land in question, and sought to have her title quieted thereto. In addition to denying the allegations of the petition, the appellees charged that at the time the appellant purchased her lot they were in the open, notorious, adverse possession of the strip and they had so held the property for more than 15 years. The appellee, Mrs. Ruby Harges, inherited her lot from her mother, who had purchased it more than 15 years ago from the son of the former owner of the appellant's lot. The 11 foot strip was originally a part of the lot owned by the appellant, but the former owner permitted her son to fence in the 11 foot strip for the convenience of his

tenants. For several years prior to the time of the purchase, the appellant rented the lot she now owns, so, unquestionably, she knew of the existence of the fence; however, she takes the position that she thought the strip in dispute belonged to her.

The testimony for the appellees was to the effect that at the time of the purchase by Mrs. Harges' mother she thought she was purchasing a lot which extended back to the fence. The real estate agent who negotiated the sale testified that it was his understanding that the lot extended back that far. Fred Ziegler, who sold the lot to Mrs. Harges' mother, testified that he told her the 11 foot strip was being used with the permission of his mother. Parties who had rented the lot from Mrs. Harges' mother testified that they had always used the 11 foot strip and that she claimed ownership of it, and that they never heard her say anything to the contrary. On the other hand, however, one party testified that he had heard an assertion to the contrary from Mrs. Harges' mother. This witness admitted, however, that Mrs. Harges' mother had furnished the materials to make repairs on a small coal shed which stood on the strip in dispute.

The record shows conclusively that the small strip of land in question has been fenced in with the lot belonging to the appellees for more than 15 years, and that the parties who had occupied that lot have always made use of it. Furthermore, at no time was a claim of ownership made, or question of possession raised, by the owners of the appellant's lot until shortly after she purchased it in 1944.

It is contended, however, since Fred Ziegler originally occupied the strip with the consent and permission of his mother, there can be no adverse holding on the part of the appellees. This contention we deem to be without merit, because the testimony for the appellees showed that Mrs. Harges' mother thought she was purchasing a lot which extended back to the line fence; and that she at all times claimed to that line and that her tenants had used the strip. Certainly they would not be bound by the original permissive entry of Fred Ziegler.

It is contended also by the appellant that adverse possession must be "hostile," and when the chancellor stated in his opinion that the term did not have to be

used in defining adverse possession in Kentucky it was error for him to find in favor of the appellees; but the term "adverse" implies or embodies hostile opposition. In Vincent v. Willis, 82 S. W. 583, 584, 26 Ky. Law Rep. 842, it was said:

"* * * It is usual, and, indeed, safer, to use the omitted word (claimed) * * *, but we are of opinion that its omission did not, in this instance, vitiate the instruction for the reason that as worded it required the jury, in order to find for appellee, to believe from the evidence not only that his possession of the land in controversy must have been actual, and 'held' to a well-defined marked boundary for the period indicated, but that such possession must have been 'adverse' as well; that is, in 'hostile opposition' (for such is one of the meanings given the word by Webster) to the claim of appellants and all others. As it must be presumed that this instruction was considered by the jury in connection with instruction No. 1, which is unobjectionable, we are unable to see how the jury could have been confused or misled with respect to the law of the case applicable to the question of possession * * *"

Under the circumstances, we think the judgment should be and it is affirmed.