Gertrude **TARTAR** et al., Appellants,

v.

C. R. **TUCKER** et al., Appellees.

Court of Appeals of Kentucky.

May 27, 1955.

John G. Prather, Somerset, for appellants.

C. Homer Neikirk, Somerset, for appellees.

HOGG, Judge.

This controversy relates to a small body of land on three sides of a plot of land 56.

feet by 80 feet, the actual controversy being whether the appellees own the plot 56 feet by 80 feet, or whether the plot they own is approximately 82 feet by 102 feet. This appeal is from a judgment holding and awarding title to appellees for the larger tract. The basis for the judgment was that appellees owned the plot 56 feet by 80 feet by virtue of their deed, and that the additional land on three sides of that plot was acquired by adverse possession.

In the year 1911, C. L. Tartar and W. R. Huff were the owners and in possession of a tract of land near the City of Somerset containing about one acre and bounded and described as follows: Beginning at a stake in the edge of the Somerset and Columbia Road running thence 180 feet to a stake; thence west 243 feet to a stake; thence north 180 feet to a stake; thence 243 feet to the beginning, said lot being on the waters of Sinking Creek.

On February 8, 1912, Tartar and Huff carved out of that tract, and by deed conveyed to H. C. Denham and Plano B. Denham, the following described boundary of land: A certain parcel of land beginning on a stake in the Columbia Road on west of storehouse and about 25 feet from same, thence nearly S 80 feet to a stake, thence eastwardly 56 feet to a stake; thence northwardly 87 feet to a small black oak, C. L. Tartar's line; thence westwardly to the Columbia Road to the beginning.

Subsequently, W. R. Huff and his wife conveyed their one-half interest in the first tract above described to C. L. Tartar. C. L. Tartar died intestate in the year 1942, holding the paper title to the first mentioned tract, less, of course, that part of it which had been carved out and sold, as aforesaid.

The Denhams conveyed the smaller tract which they had purchased from Tartar and Huff to Harmon and Silvers. The deed contained the exact description which had been contained in the deed to the Denhams. This tract, by mesne conveyances, has come down to and is now the property of appellees, McAlpin. In each conveyance of this carved-out tract, the description of the property conveyed is the same as the description given to it when it was originally sold to the Denhams.

Appellees, Tucker and wife, received their deed to the property in June, 1928, and remained in possession of the property until July, 1945, at which time they sold and conveyed the property to appellees, McAlpin. At the time appellees, Tucker, took possession of the property, there was included on said property a storehouse building, out buildings, and a dwelling house attached to the storehouse. They took possession not only of the plot of land which was 56 feet by 80 feet, but a somewhat larger plot which was bounded by a fence on the west side, a fence on the south side, a concrete curbing wall on the east side, and the road on the north side, which road is now known as Highway 80. When appellees, McAlpin, purchased the property from the Tuckers, they likewise took possession of the same property, which was marked and enclosed by the aforesaid fences, concrete wall and highway.

About two years ago appellees, McAlpin, after they had been in possession for several years, ascertained that their deed as written, and the deeds as written by their predecessors in title, did not convey the entire lot as enclosed and they brought this fact to the attention of appellant Gertrude Tartar, one of the heirs of C. L. Tartar. Soon thereafter appellants brought this suit to quiet the title to this small body of land on three sides of the land described in the deed to Tucker and to McAlpin. McAlpins claim this additional land by adverse possession and that of their predecessors in title. If their plea is well taken, it must be based on the adverse user of such land by their predecessors in title, appellees Tucker.

The evidence is clear that when Tucker took possession under his deed, he not only took possession of the 56 by 80-foot tract, but he took possession of all that within the fences, which is a body of land about 80 feet by 102 feet. He used the entire fenced boundary as his own. The portion of the dwelling on the property which he

put up, and where the McAlpins now reside, is partly on the larger boundary. The driveway leading from the road to the back end of McAlpins' property is also outside the deeded boundary, but enclosed within the fence. This passway has been continuously used by the McAlpins and by the Tuckers since 1928; it has been used as their own; and while it is true that some of the tenants of the Tartars, who owned lands adjacent to the tract in controversy, have used this driveway periodically, the evidence is fairly conclusive that it was used by permission of the appellees and not as a matter of right. The evidence in the case shows that since 1928 the entire boundary within the enclosures has been used and kept up by the appellees without let or hindrance from the Tartars. Among other things, appellees kept the grass mowed upon sections of the disputed tract; Tucker tore down a garage on the disputed tract and rebuilt it, planted trees along the fence rows, and built a chicken house near the fence which was on the disputed area. As a matter of fact, the evidence shows that during the lifetime of C. L. Tartar a part of the fence enclosing this boundary got into a bad state of repair and Mr. Tartar and appellee Tucker, at their joint expense and on mutually agreeable terms, repaired the fence. Mr. Tartar lived in close proximity to the property in controversy for many years while Tucker lived on the land in controversy, and while Tucker used and controlled the entire boundary well-marked and defined, never at any time did Tartar question the use or control of it on the part of Tucker. Neither of the appellants raised any question as to the ownership of the entire boundary now in dispute until it was brought home to them by McAlpin that his deed in reality did not convey the entire fenced area.

In summary, appellee Tucker, in 1928, took possession of the plot of land enclosed by a fence on the west side, a fence on the south side, a concrete wall and fence on the east side; and by a road on the north side. He kept and used the property to that extent until 1945 when he sold the property (56 x 80) to appellees McAlpins, who took possession of the same property with these clearly defined boundaries and remained in quiet possession thereof until about two years ago when the flare-up came.

Appellants cite numerous authorities to the effect that where one occupies another's land by mistake, but does not intend to claim land not belonging to him, his possession will not be adverse. On the other hand, appellees cite authorities to the effect that even though a party may make a mistake as to the true location of a boundary line, if he has the intention to hold another's property adversely such intention will determine the nature of the possession.

Under both lines of cases the claimant's intention is the controlling factor. Adverse possession, even when held by mistake, may ripen into a prescriptive right after 15 years of such possession. There are five elements of adverse possession, viz., (1) possession must be hostile and under claim of right; (2) it must be actual; (3) it must be open and notorious; (4) it must be exclusive, and (5) it must be continuous. If any one of these constituents is missing, the possession will not effect the bar of the legal title.

The last four of these elements clearly exist in this case. Element (1) may be open to some question, whether the possession of appellees and their predecessor has been hostile and under a claim of right.

Here, the property in controversy was built upon and improved to some extent, and it was used and improved as owners are accustomed to do. It would seem that such conduct shows a hostile entry which amounted to a public pronouncement of hostility to the title of the real owner. Appellees were in possession up to the supposed lines with absolute claim of title thereto. They are deemed to have held adversely, although their claim of title originated in a mistaken belief that the land lay within the calls of their deeds.

This case seems to come within that category of cases which hold that where

the claimant, by the nature of his claiming, does not concede that there may be a mistake as to the location of the true line, "and evinces no intention of surrendering any land held by him, but claims it as his own," then the holding is adverse. Heinrichs v. Polking, 185 Ky. 433, 215 S.W. 179; Carpenter v. Rose, 186 Ky. 686, 217 S.W. 1009; Johnson v. Dobson, 208 Ky. 401, 270 S.W. 815. Cf. Turner v. Morgan, 158 Ky. 511, 165 S.W. 684, 52 L.R.A.,N.S., 106.

The case of Johnson v. Dobson, supra, is very similar to this case. There, the owner of a lot, who also owned an adjoining lot to the rear, built a fence eight feet back on the rear lot. He sold the front lot but did not include in the deed the eight-foot strip back to the fence. A barn was built on the front lot but it extended on the eight-foot strip. Although the deed of the grantor included only the front lot, we held that the building of the fence and the construction of the barn on the strip constituted open, adverse and continuous possession of the eight-foot strip enclosed by the fence. Though grantee's deed did not cover the eight-foot strip, she believed her deed covered it all and meant to and did claim the strip extending to the fence for a period of 30 years. Therefore, she had acquired the strip by adverse possession.

One may obtain title to lands by adverse user outside of the particular boundary of the deed, especially where the boundary is well defined, as here, when the adverse possession has existed for a period of 15 years. In the case at bar, the fences have stood and the adverse claim made much longer than 15 years. See, Garthwaite v. Harges, 301 Ky. 653, 192 S.W.2d 734; Lewallen v. Mays, 265 Ky. 1, 95 S.W.2d 1125.

It is contended by appellants that there was no privity of adverse possession between the present claimants, McAlpins, and the former claimants and owners, and assert that appellees failed to meet the burden of proving privity so as to entitle them to tack on their possession to that of the former claimants. We believe the requisite privity of possession between the

Tuckers and McAlpins may be implied from the circumstances. It seems clear that the Tuckers intended to transfer to the McAlpins the disputed area occupied by them, though not embraced in their deed. See, 46 A.L.R., page 795. Aside from that, it appears that the Tuckers held the disputed area adversely for more than the statutory period. No time intervened between the time the Tuckers sold and the time the McAlpins assumed the possession of that which the Tuckers had likewise possessed.

The judgment is affirmed.