RENDERED: APRIL 14, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0622-MR
AND
NO. 2021-CA-0647-MR

KENNETH CRAIG AND KENNETH
CRAIG AS EXECUTOR OF THE
ESTATE OF KELLY SCHNEIDER          APPELLANTS/CROSS-APPELLEES

|  |  |
|---|---|
| v. | APPEAL AND CROSS-APPEAL FROM TRIMBLE CIRCUIT COURT HONORABLE JERRY CROSBY, II, JUDGE HONORABLE KAREN A. CONRAD, JUDGE ACTION NO. 19-CI-00129 |

SYLVIA SCHNEIDER                     APPELLEE/CROSS-APPELLANT

OPINION
AFFIRMING IN PART,
VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Kenneth Craig and Kenneth Craig as Executor of the Estate of Kelly Schneider (collectively, the Craigs)[1] have appealed, and Sylvia Schneider has cross-appealed, from the orders of the Trimble Circuit Court related to a family dispute as to the ownership of five acres of land and the appropriate remedy. We affirm on the adverse possession and related estoppel claims, but we vacate and remand on the unjust enrichment claim.

For ease of understanding, we shall first identify the parties and other pertinent individuals as well as their relationships to each other. Kenneth Craig (Kenneth) is the former husband of Kelly Schneider (Kelly), who passed away in May 2022. Sylvia Schneider (Sylvia) is Kelly's mother. Kelly's father is Lonnie Schneider (Lonnie); he passed away on August 23, 2019. Tracy Hall is the daughter of Sylvia and Lonnie, and she is Kelly's sister. Tracy is married to David Hall (collectively, the Halls). Jeremy Craig is Kenneth and Kelly's son. Logan Craig is Jeremy's son and Kenneth and Kelly's grandson.

In the mid-1990s, Sylvia and Lonnie purchased a 65-acre farm in Bedford, Trimble County, where they intended for the entire family to live. Sylvia and Lonnie moved into the existing residence, and the Craigs and the Halls moved

---

[1] Kelly Schneider passed away during the pendency of these appeals, and Kenneth Craig was appointed as the executor of her estate. The Estate was substituted as a party by order of this Court on September 19, 2022. Although the Craigs were no longer married during these proceedings, we shall refer to them as the Craigs, when appropriate.

onto the farm into manufactured homes they purchased and had installed. Upon moving to the farm, Lonnie allegedly offered to deed five acres of land to the Craigs and to the Halls upon the payment of $5,000.00. The Halls never paid Lonnie, but the Craigs claimed that they had. Later, Jeremy also moved onto the property in another house. Kelly moved to Louisville in 2012 when she and Kenneth divorced but later returned with her parents. In August 2019, an altercation took place between the Craigs and Jeremy, resulting in the filing of domestic violence petitions by Jeremy against his parents that were later dismissed. Kelly moved out of her parents' house and back in with Kenneth. Lonnie passed away later that month, and Sylvia filed a petition to evict Kenneth from the property the following month. With this brief background, we shall turn our attention to the present action.

This action began with the filing of a verified complaint by Kenneth on September 30, 2019, to quiet title to a five-acre tract of land at 116 Hilltop Lane, in Bedford, Kentucky, which was part of a larger tract that had been owned by Sylvia (and Lonnie) since 1995. In October 1996, Kenneth alleged that he had constructed a home on the property with a concrete foundation and had taken out a mortgage to do so. The mortgage still had a remaining balance. Kenneth also installed a permanent swimming pool, a Blitz building next to the house, and permanent landscaping. He had maintained the property around his home since

1996. He alleged that there had never been any question raised as to his right of residence and ownership of the subject property until September 20, 2019, when Sylvia filed an action seeking to evict him from the property. Therefore, he sought to quiet title in his favor based upon a claim of adverse possession. If he were to be evicted, Kenneth also alleged claims of equitable estoppel based upon Sylvia's knowledge of the substantial investments and improvements he had made to the property, and unjust enrichment, also based upon the substantial investments and improvements he had made to the property.

Sylvia filed an answer raising several affirmative defenses, including that the complaint was barred by the statute of frauds, that Kenneth failed to name indispensable parties, and that she (Sylvia) had withdrawn her permission for Kenneth to reside on the real estate on August 10, 2019. She admitted that she had filed a forcible detainer action in the Trimble District Court to evict Kenneth from the property (Case No. 19-C-00135) on September 20, 2019. Along with her answer, Sylvia filed a counterclaim, alleging that she was the fee simple owner of the property and that Kenneth had refused to remove himself and his manufactured home after she gave him notice to vacate. In her counterclaim, Sylvia sought a temporary and permanent injunction enjoining Kenneth from entering or remaining on the property as well as compensatory and punitive damages.

-4-

In her answer to Kenneth's request for admission, Sylvia stated that neither Kenneth nor Kelly had paid her or Lonnie $5,000.00 for the property at 116 Hilltop Lane or that she or Lonnie had never promised Kenneth or anyone else that the land upon which they resided would be transferred to them at any point.

The court held a two-day bench trial on February 18 and 19, 2020. Kenneth's counsel stated the issues he was raising were adverse possession based on the quiet title action, equitable estoppel due to improvement of the property to his detrimental reliance, and unjust enrichment because the improvements to the property were permanent and would inure to Sylvia's benefit if he were to be evicted. Sylvia contended that Kenneth did not have any documentary proof that he owned the property and that he was living on the property with her and Lonnie's permission.

The court heard testimony from several witnesses, including family members. The family members' testimony concerned the purchase of the 65-acre farm by Sylvia and Lonnie in 1995, the rest of the family's move to the property and installation of manufactured homes with the permission of Lonnie and Sylvia, and the alleged agreement between Lonnie and the Craigs to transfer five acres of land in exchange for $5,000.00 (and whether the funds were ever paid). The Craigs testified that the money had been paid, but the deed had never been transferred, while Sylvia denied having any knowledge about the agreement or

payment. Kenneth was not able to produce evidence of the $5,000.00 check, although he was able to produce receipts and other documents related to moving onto the property and installing the manufactured home and other buildings. In addition, the parties testified about the August 2019 altercation that led to Sylvia's filing of a forcible detainer action against Kenneth. The court also heard testimony from an insurance adjuster, a real estate appraiser, and a person who works in the business of moving mobile homes.

After the hearing, the parties submitted memoranda in support of their respective positions. Kenneth argued that he should prevail on the three legal theories he presented: 1) that he should be granted title to 116 Hilltop Lane due to his adverse possession of the property, noting that he had paid Lonnie $5,000.00 for the property in exchange for a deed that he never received; 2) that if the court determined that he did not meet the criteria for adverse possession, Sylvia should be equitably estopped from evicting him; and 3) that if the court disagreed with the first two theories, Sylvia should be required to compensate him for the total value of his improvements to the land while he lived there, noting that the home could not be moved without damaging it and that it would cost $75,000.00 to do so.

In her brief, Sylvia disputed the existence of an agreement between Kenneth and Lonnie, or that the $5,000.00 was actually paid to Lonnie. She also disputed that Kenneth had met his burden of proof on any of the three theories he

put forth, specifically asserting that Kenneth was on the property with her and Lonnie's permission as to the adverse possession theory.

The circuit court entered an order on August 27, 2020, setting forth the factual background of the case, summarizing the testimony presented at the trial, and making findings.

> [Lonnie], according to Plaintiff Kenneth, made an offer to Plaintiff that if he would pay $5000.00 to defray the purchase price of the 65-acre tract, [Lonnie and Sylvia] would in turn convey a five acre tract to him and Kelly. There was no specific description of the tract. David Hall, the Schneiders' other son-in-law, and his spouse Tracy also live on the property. Per Mr. Hall, the same offer was made to him. He never had the $5000 to pay the Schneiders so no deed was ever tendered. He has lived in his own home on the property for at least as many years as the Craigs.

The court went on to detail that the Craigs had purchased a manufactured home in 1997, which was installed onto a concrete pier foundation. It had electric, water, septic, and gas services, which were installed specifically for them, and everyone agreed that the manufactured home was moveable. The fair market value of the home was $119,500.00, including the water, septic, utilities, and garage (the Blitz building). And the estimated cost to move the manufactured home was $75,000.00. In addition, an insurance company witness testified that she did not know whether the company would extend coverage on the home if it were to be moved.

The court went on to discuss the adverse possession testimony:

> Kenneth contends he has adversely possessed the property and is entitled to a Judgment from the Court. While there is no proposed metes and bounds description by him, he testified to maintaining an area, including his driveway, as well as inside driveway to include the shed and barn, a backyard including a fenced in area for dogs and an area which he had maintained exclusively by mowing and keeping trees and brush cleared, describing it as a "clearing."
>
> Kenneth further claims by adverse possession an area extending to the "pool" which his wife purchased for use of the entire extended family. This testimony was contradicted by David Hall, Kenneth's brother-in-law, who stated he also maintained that area. It does not appear to have been exclusively occupied by Kenneth.
>
> [Kenneth] claims he paid Lonnie Schneider the $5000 purchase price but Lonnie never gave him the deed. He had no documentation of proof of payment stating that his credit union does not keep records past seven years and as such it was not possible for him to get them. Kenneth states he asked Lonnie for the deed several times to no avail.
>
> Kenneth's ex-wife Kelly testified to the effect that as a couple they had paid $5000 to her father Lonnie. Again, she could not offer proof of same.
>
> Sylvia Schneider, the Defendant, testified she knew nothing of the $5000 payment however she did recall that she herself borrowed $7000 to pay off a debt of the couple, incurred with the individual doing the excavation and foundation work after he threatened to take Kelly to court. Kelly did show proof of that repayment to her mother.

In addition, the court stated:

Kenneth and Kelly Craig divorced in 2012 before the Trimble Family Court. Their property settlement agreement dated October 22, 2012 was admitted as Def. Exh. 1 and specifically discusses the manufactured home. It states "the mobile home sits on real estate owned by Petitioner's (Kelly's) father." It was agreed that she and Kenneth would retain joint ownership of the home, but Kenneth would reside there and pay the mortgage, taxes and insurance. Kelly, who moved out in 2012, has returned to the property in the last few years, residing with her parents. After a family incident in summer 2019, she moved out from her parents' home and back in with her ex-husband to the manufactured home. Per agreement of Mr. and Mrs. Craig in the property settlement agreement, the manufactured home is to be titled in the name of their grandson Logan Craig, once he reaches the age of 18. His 18th birthday is [redacted], which is some 6 years and 5 months away.

The court found that Logan was a third-party beneficiary to the property settlement agreement but had not been named as a party to this lawsuit. And Kelly, who was a joint owner of the home, had not been named as a party to the lawsuit, although the court noted that she was aware of Kenneth's claim and had not raised one of her own.

The court went on to consider the value of the home and improvements, noting Sylvia's argument that Kenneth could not prevail on his adverse possession claim because he was there by permission. Sylvia wanted him to move the home, barn, and shed off the property. The barn was appraised at $12,000.00 and was included in the $119,500.00 value. It could not be moved

because its posts were sunk in concrete. The shed, however, could be moved. To move the manufactured home would cost between $50,000.00 and $75,000.00.

The court summarized Kenneth's additional arguments as follows: in the event his adverse possession claim was unsuccessful, Kenneth demanded that the court award him the fair market value of the home and improvements. However, the court noted that Kenneth only owned half of the house, and there was no testimony regarding the value of the grandchild's future interest. Under an equitable theory, Kenneth argued that Sylvia should be required to pay the cost to move the home as he had been promised that he could place the home on the land and incurred expenses to do so.

The court went on to conclude:

> The Court agrees with [Kenneth's] legal argument that upon payment of $5000 and occupation of the land under a promise to convey a deed, adverse possession may begin to accrue, and any defense of "permissive use" does not defeat such adverse possession claim.

> The Court however cannot find that Kenneth paid the $5000.00 to the Schneiders. There is no receipt and there is no proof of payment. On the other hand there are numerous other receipts placed in the record as evidence including for the purchase of the manufactured home, installation of the garage and concrete, and site improvements for septic, water, etc. all from approximately the same period of time when the manufactured home was purchased and moved to the property. As such, the Court cannot find that [Kenneth] has adversely possessed based upon occupation under a parole [sic] agreement to convey since the Court does not

-10-

find that payment was made. The possession then was based upon permissive use as Sylvia Schneider has argued. The possession was not "adverse."

The court did not agree that the manufactured home was moveable based upon the cost to move it ($50,000.00 to $75,000.00) versus its worth ($119,500.00), including improvements ($26,000.00). "It would be foolish and a waste of resources to so order and the Court does not believe it is conscionable to do so." In addition, insurance coverage was in doubt. It therefore concluded that moving the manufactured home was not an option.

The court attempted to determine Kenneth's share of the value of the home, including the agreement to devise the home to his grandson and a mortgage in excess of $48,000.00. Based on the record, the court could not determine the value of his share, and it could not resolve it due to the lack of necessary parties, including Kelly, the grandson, and the mortgage company (Ditech). The court later scheduled a hearing on September 23, 2020, to allow the parties to address the matters.

Prior to the hearing date, Kenneth moved to file an amended complaint to add Kelly as a plaintiff, as she was a joint owner of the home. Sylvia objected to the motion.

On November 12, 2020, Sylvia also filed a motion pursuant to Kentucky Rules of Civil Procedure (CR) 52 and requested that the court make

findings of fact on all essential issues of fact, rule on Kenneth's claims, and enter a final order. She stated that the parties attempted to mediate the claims but were unsuccessful. In response, Kenneth argued that the court should rule on his motion to amend the complaint, incorporate the ruling of the Trimble Family Court amending the property settlement agreement to extinguish any third-party beneficiary interests of the grandson, clarify its ruling regarding his unjust enrichment claim, and address more specifically his adverse possession claim by focusing on the factors set forth in *Tarter v. Tucker*, 280 S.W.2d 150 (Ky. 1955).

On January 4, 2021, the court entered an order including additional findings. After summarizing its previous findings and noting that it had not set forth any conclusions, other than regarding adverse possession, the court permitted the filing of the amended complaint naming Kelly as a co-plaintiff and noted that Logan was no longer a third-party beneficiary to the property. It then made the following findings:

> 2. The Court has been requested to clarify its previous Findings on unjust enrichment. Based upon the Court's Order in this case, the manufactured home shall be removed, thus no further Findings are made as to unjust enrichment. The Court does not disagree with the legal argument that if it ordered the mobile home [to] remain on the property, Mrs. Schneider should pay the fair market value as set by Mr. Gaines appraisal in testimony.

> 3. Application of the Tartar case. The Tartar case lists the five basic elements of adverse possession;

-12-

however, based on the Court's previous Findings that the use of the property in question was "permissive" the Plaintiff is unable to make the claim for adverse possession in that his claim was never "hostile" because it was with permission.

4. No damages for trespass will be awarded to Defendant Mrs. Schneider as the Plaintiff was permitted to locate his home and live on the property for many years. The Plaintiff initiated this litigation for adverse possession after Mrs. Schneider attempted an eviction through District Court and until the Plaintiff is under a Court Order to leave he cannot be said to have "trespassed" since he had a legitimate right to make his claims.

5. The punitive damages claim has not been established by the evidence, which shows that this was a claim for adverse possession by parole [sic] deed. That claim was denied based upon a lack of documentation to prove payment was made. There is no evidence to support an award of punitive damages.

The court also made corrections to its earlier findings. It found that the cost to move the manufactured home would be $75,000.00 and that the value of the improvements to the property that could not be moved was $27,440.00 (the depreciated value of the garage was $13,440.00 and the value of the in-ground utilities (gas, water, electric, and septic) was $14,000.00). It then stated:

The Court stated in the August 27, 2020 Order it felt the moving cost was such as to render an Order to move the manufactured home unconscionable as a waste of resources. At the time, the Court was proceeding on the belief the home had to be valued based upon a Third Party beneficiary claim which would ripen in six and a half years and as such, the amount representing the value

-13-

of the mobile home together with the site improvements was greatly reduced, given the agreement of the Craigs that their ownership was limited to a six and a half year period and subject to divestment.

The court noted the value of the home and improvements (and that Kenneth wanted the court to award him its value and the value of the other improvements), Sylvia's vehement opposition to Kenneth remaining on the property, and that Sylvia did not have any use for the mobile home. After weighing the parties' positions, the court ultimately concluded as follows:

> The Court, facing the prospect of assessing Mrs. Schneider $119,500 for an item she has no desire to retain, or assessing a portion of the moving costs coupled with the value of the site improvements, feels the latter is more in line with preserving the assets of each of the Parties. Mr. Craig could keep his home and Mrs. Schneider would receive an Order forcing Mr. Craig to leave her property and remain off her property. At this point, the Court's concern with the cost of moving as a waste of resources is outweighed by the burden on Mrs. Schneider to pay out $119,500 for a home she does not want and which can be moved off the property according to the testimony by Plaintiff's expert Mr. Benham.

Therefore, the court ordered both parties to contribute to the cost of moving the home. Sylvia was ordered to pay $30,000.00, recognizing that this was reasonable "given the role the Schneiders played by inviting the Craigs to move to the property and bring the manufactured home there[.]" Sylvia was also ordered to contribute $27,440.00 for the value of the permanent, non-moveable structures. The Craigs would be responsible for the remainder of the cost to move the house.

Lastly, the court opted to withhold finality for 30 days to allow the parties to again attempt to mediate the case. This was later extended for an additional 30 days.

On March 8, 2021, the Craigs filed a CR 59.05 motion requesting the court to clarify its January 4, 2021, order. On March 12, 2021, Sylvia filed a motion to alter and/or amend the same order, arguing that it was manifestly unjust that she be required to pay moving expenses or expenses for improvements to the Craigs.

Following a hearing, the court entered an order on May 3, 2021, denying Sylvia's motion, ruling that she had not presented any new law or facts and that she could not show manifest injustice. The court then set the deadline for removal of the manufactured home to August 15, 2021, and made the order final and appealable. The Craigs filed a notice of appeal from the three orders detailed above (Appeal No. 2021-CA-0622-MR). Sylvia cross-appealed from the same three orders (Appeal No. 2021-CA-0647-MR).

In their appeal, the Craigs argue that the circuit court erred in holding that they had not established their claims of adverse possession or estoppel, and that it did not grant them a proper remedy on the unjust enrichment claim. In her cross-appeal, Sylvia contends that the circuit court improperly ordered her to pay a

part of the moving expenses and for improvements that the Craigs had installed on the property.

CR 52.01 provides the general framework for bench trials as well as review in the Court of Appeals:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.] . . . Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

In *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003), the Supreme Court of Kentucky stated that an appellate court may set aside a lower court's findings made pursuant to CR 52.01 only if those findings "are clearly erroneous, i.e., whether or not those findings are supported by substantial evidence." (Footnotes omitted.) That Court went on to address the definition of substantial evidence:

> Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable men. Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, mere doubt as to the correctness of a finding will not justify its reversal, and

-16-

> appellate courts should not disturb trial court findings
> that are supported by substantial evidence.

*Id.* (internal quotation marks, footnotes, brackets, and ellipses omitted). On the other hand, we review a trial court's legal conclusions using a *de novo* standard of review. *See Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 719 (Ky. 2000).

For their first argument, the Craigs contend that the circuit court erred when it concluded that they had failed to establish adverse possession of the land at issue. In *Tartar*, *supra*, the former Court of Appeals set forth the five factors that must be proven to establish such a claim, noting that, "the claimant's intention is the controlling factor[:]"

> Adverse possession, even when held by mistake, may ripen into a prescriptive right after 15 years of such possession. There are five elements of adverse possession, viz., (1) possession must be hostile and under claim of right; (2) it must be actual; (3) it must be open and notorious; (4) it must be exclusive, and (5) it must be continuous. If any one of these constituents is missing, the possession will not effect the bar of the legal title.

280 S.W.2d at 152. "[I]t is the claimant's burden to prove [these factors] by clear and convincing evidence." *Elsea v. Day*, 448 S.W.3d 259, 263 (Ky. App. 2014).

The primary question in the present case is whether the Craigs' possession of the land was hostile and under a claim of right. The circuit court held that if the Craigs had established payment of the $5,000.00 as well as occupation under a promise to transfer the deed, their permissive use of the

-17-

property would not have defeated their adverse possession claim. Because the court found that this payment had not been made, it concluded that the Craigs' use was permissive and, therefore, could not be adverse. The Craigs contend that payment is not a prerequisite to adverse possession and that their intention was to adversely possess the land.

On the other hand, Sylvia argues that if a person who uses another person's property with the permission, express or implied, of the owner, there cannot be a legal basis for adverse possession.

> If a person, who enters upon and occupies property for 15 years, or any number of years, merely by the generosity or favor of the real owner, could successfully assert title to it from the beginning, or from any subsequent period, upon the grounds of adverse possession growing out of long-continued, peaceable, and permissive occupancy, uninterrupted by any overt acts of ownership sufficient to put the real owner upon notice that his title was in danger, the beneficiary of the generosity or favor of another could take advantage of his kindness and deprive him of his property without notice that a hostile claim was asserted. A condition like this the law will not tolerate.

*Tippenhauer v. Tippenhauer*, 158 Ky. 639, 166 S.W. 225, 227 (1914).

We are persuaded by Sylvia's argument and agree with her that the Craigs were on Sylvia's property and erected the structures with permission. The evidence supports Sylvia's assertions that the Craigs knew they did not own the land, including the various documents from the Craigs' dissolution action and from

the purchase of the manufactured home. In addition, the Craigs never paid any taxes on the land; Sylvia (and Lonnie) paid the property taxes. Had the Craigs presented documentary evidence that they had paid Lonnie and/or Sylvia the $5,000.00, the result in this case would have been different. Like the circuit court, we find it noteworthy that the Craigs were able to produce documents and receipts for clearing the property, placing a driveway, and erecting buildings, including the manufactured home and Blitz building, but they were unable to produce any documentary evidence to support the payment of the $5,000.00 check to Lonnie.

While proof of payment is certainly not required to establish adverse possession, here, such proof of payment without the transfer of the deed to the five acres of land would have established the hostile nature of the Craigs' possession of it. Accordingly, we hold that the circuit court did not commit any error in concluding that the Craigs failed to establish a claim of adverse possession of the land and affirm on this issue.

Next, the Craigs argue, in the alternative, that Sylvia should be estopped from evicting them from the property under theories of equitable and promissory estoppel. The circuit court does not appear to have addressed this issue, other than to describe, in the initial order, Kenneth's argument set forth in his trial brief "that he was promised he could place the home on the land and having incurred expenses to do so it is only equitable that Sylvia pay the cost to

-19-

move the home off the property." However, we reject the Craigs' arguments under both theories. As Sylvia stated in her brief, the Craigs' equitable estoppel argument was based on adverse possession, and that claim was rejected. And Kenneth admitted in his trial brief that he had not specifically pled promissory estoppel until he filed that brief, which was after the bench trial had taken place. We find no support in the record for the Craigs' estoppel argument.

Finally, we shall address the unjust enrichment issue. The Craigs contend that while the circuit court properly found that Sylvia would be unjustly enriched, the remedy it granted was incomplete and improper. Sylvia's cross-appeal also relates to this issue, as she asserts that the court erred in ordering her to pay $30,000.00 in moving expenses and $27,440.00 for the improvements that had been installed on the land for their home, which included the Blitz building and in-ground utilities. She argues that the court had not made any factual findings or cited to any legal authority that would require her to pay either amount. She also disputes the Craigs' assertion that the circuit court had found in their favor on unjust enrichment. The court, in making its decision, stated:

> The Court, facing the prospect of assessing Mrs. Schneider $119,500 for an item she has no desire to retain, or assessing a portion of the moving costs coupled with the value of the site improvements, feels the latter is more in line with preserving the assets of each of the Parties. Mr. Craig could keep his home and Mrs. Schneider would receive an Order forcing Mr. Craig to leave her property and remain off her property. At this

> point, the Court's concern with the cost of moving as a
> waste of resources is outweighed by the burden on Mrs.
> Schneider to pay out $119,500 for a home she does not
> want and which can be moved off the property according
> to the testimony by Plaintiff's expert Mr. Benham.

The court then stated that it had "determined that given the role the Schneiders played by inviting the Craigs to move to the property and bring the manufactured home there, it is only reasonable to assess Mrs. Schneider a share of the cost to remove it." The court, without any further explanation, also required Sylvia to contribute $27,440.00, which was the value it placed on the permanent site improvements made by the Craigs.

With its decision, we recognize that the circuit court was attempting to craft an equitable solution to a difficult situation. However, the court did not cite to any factual findings (other than the costs to move the manufactured home and the value of the improvements that would remain on the farm) or to any legal authority to support its decision.

To establish a claim of unjust enrichment, a party "must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009). The circuit court did not discuss any of these elements in making its decision or determine whether the facts supported this claim. In attempting to

reach an equitable solution, the circuit court pointed to Sylvia and Lonnie's role in inviting the Craigs to move to the property apparently as justification of assigning these costs. The court did not mention the Craigs' decision to risk moving to the property and expending money on improvements without having a deed to the land upon which those improvements were placed. In addition, we agree with Sylvia in her cross-appeal that the court did not provide its legal basis for ordering her to pay a portion of the moving expenses and for the permanent improvements.

Because the circuit court did not adequately address the unjust enrichment issue by addressing the required elements or provide a legal basis for assessing the costs against Sylvia, we must hold that the circuit court erred as a matter of law in ordering Sylvia to pay such amounts to the Craigs. Therefore, we must vacate this decision and remand this matter for the court to properly consider the unjust enrichment claim and, if necessary, the appropriate remedy.

For the foregoing reasons, the orders of the Trimble Circuit Court are affirmed in part and vacated in part, and this matter is remanded for proceedings in accordance with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS/CROSS-APPELLEES:

Robert Riley
LaGrange, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

Ruth H. Baxter
Carrollton, Kentucky