## Hotze v. Ring.

(Decided March 25, 1938.)

COLLINS & COLLINS for appellant.

W. D. COCHRAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

We shall refer to the parties appellant and appellee as they were designated below (plaintiff and defendant); the appellant being the defendant in that court and the appellee the plaintiff. Plaintiff filed the action in the Mason circuit court against defendant to recover from him an insignificant quantity of cuneiform shaped land containing perhaps not exceeding one-thirtieth of an acre. The parties own adjoining farms, bordered on the south by Bull creek immediately upon the north bank of which is Mason and Lewis pike, which at that point is a highly improved concrete road, occupying the same right of way upon which there has been a public road for a great number of years. The dividing line as contained in the plaintiff's deed (and apparently the same as contained in defendant's deed, though perhaps differently described, since it is not the beginning corner of his deed) is thus described: "Beginning at the corner of Hotze's line and running thence up the branch with said line to an elm, corner opposite the first pond." That description is the one brought to this court, although it would appear that the comma between the word "elm" and the word "corner" therein was erroneously inserted. The general course of the branch therein referred to is from north to south, extending across the pike and emptying into Bull creek immediately south of the pike. From the elm corner to within about 75 feet of the pike the branch runs southwestwardly, and thence turns to the east and takes a course to the creek almost directly south. Some references in the testimony (although not shown by any plat) indicate that there is another branch, draining westward territory, flowing into the described one at the point of the turn east, and from thence forward the branch is composed of the two. At any rate, many years ago there was a stone wall built from a point somewhere about the elm corner along the western bank of the described branch down to its described eastward turn, and where the wall also stopped, and which, as stated, is about 75 feet from the Mason and Lewis pike.

Somewhere between 30 and 50 years ago—or perhaps longer—some of the owners of the involved lands, but if not both then one of them, built a water gap across the branch at its eastward turn and, of course, at the termination of the stone wall, and from the east end of which the same party or parties erected a wire fence on the east side of the branch after it made the turn, rendering its course practically north and south. That wire fence was also something near 75 feet long from its beginning point at the water gap to the pike. There is evidence also that within that distance—and somewhere on the banks of the branch or in its bed—there is a spring which furnished water for the stock of the owners of the plaintiff's farm.

Before the construction of the water gap and the erection of the described wire fence, each party had a passway running along the stone fence and continuing straight from the turn of the branch (and the end of the stone wall) to the pike. The point where they reached the pike was something like 50 feet west of where the branch reached the pike. That line forms the hypotenuse of the involved triangle. It, as so located between the branch and those old passways, with a 50-foot base and a 75-foot perpendicular is all the land that is involved in this litigation. Plaintiff contends that "the corner of Hotze's line" is located at the south end of the perpendicular line of the described triangle, which is where the wire fence above referred to was constructed, but on the east bank of the branch and which, he contends, is confirmed by the described direction of the line, which is, "running thence up the branch."

On the other hand, defendant contends that the beginning corner of the dividing line is at the point of the triangle made by its hypotenuse and its base, and which is where the passways above referred to connect with the pike, something like 50 feet west of the branch. A literal interpretation of the language of the described line, as above inserted, would seem to fortify plaintiff's interpretation. But he does not depend entirely thereon, since he further contends that the construction of the water gap, and the erection of the wire fence at the places indicated some 40 or more years ago (whereby the south end of the branch was taken in as a part of his farm; while its north end became a part of defendant's farm) and the continuous occupation of his farm by its prior successive owners up to the wire fence, was

the result of a mutual and agreed location of the dividing line by the respective adjoining owners at the time and which had been acquiesced in throughout the succeeding years. The court sustained the latter contention of plaintiff and entered judgment accordingly, from which defendant prosecutes this appeal; but the court does not appear to have interpreted the language describing the disputed line as embracing the controverted triangle, although that language, as we have intimated, would seem to support that conclusion, independently of any prior agreed location of the line with continuous acquiescence therein thereafter.

Appellant's counsel argue that plaintiff's deed does not embrace the triangle in controversy, and that his pleading setting up adverse possession of it is defective by failing to allege the necessary elements to produce it. That contention, however, ignores the above-indicated authorized interpretation of the disputed line as described in plaintiff's deed, and again submits to the court that language for interpretation. As described in the deed no one can tell on which side of the branch is the beginning point of that line, nor can any one tell whether or not it should continue throughout on the same side of the branch as is the place of its starting point on whichever side it may be located. Neither can any one tell whether the line begins in the bottom of the branch and so continues in its bed up to the elm tree corner. Therefore, the exact location of the line is not "definitely known," and the only way to determine how that question should now be settled is to look to the conduct of the parties with reference thereto. When done we find that the separating fence along the line was constructed for at least 40 years prior to the filing of this action in the manner above described, and so as to let each adjoining owner have within his inclosure a part of the branch along its course from the pike up to the elm corner. They have acquiesced in that adjustment according to many witnesses, including prior owners, although others introduced by defendant to some extent contradict that testimony. The court, however, accepted the testimony of plaintiff's witnesses, and we are not authorized, under a well-established rule, to disturb that finding, unless we entertain more than a doubt concerning its correctness. We do not entertain any such doubt. On the contrary, we conclude that the testimony more than preponderates in favor of

plaintiff's contention, and that the learned trial court correctly so determined.

Much discussion is indulged in by respective counsel with reference to the law concerning agreed dividing lines and the conditions under which such agreements are enforceable—all of which involve relevant collateral questions such as, whether or not there were pre-existing disputes as to the proper location of the line, with the necessarily followed occupation up to it, and the necessary acquiescence therein, etc. Much has been written concerning such matters, a large part of which grows out of the right to alter or change the true line by oral agreements, as being contrary to the statute of frauds, Kentucky Statutes, sec. 470; and also involving the question of consideration for the agreement, whether it be oral or written. All courts agree, however, that when there is a bona fide dispute as to the true location of a line, or its location is not definitely known, that a sufficient consideration exists for the making of an agreed one. While there is no express proof to show that in this case there was ever any *dispute* as to the true location of the line here involved, yet its exact location is indefinite, as above pointed out, and it does appear, as hereinbefore stated, that the dividing fence separating the two farms was arranged and located as hereinbefore stated and has been acquiesced in for as much as or more than 40 years. Therefore, it becomes immaterial whether the agreed or apparently agreed location of the line was or not orally made, or whether or not there was any consideration for the agreement, since the occupancy of plaintiff and his predecessors in title is proven to have been coextensive with that agreed line for a sufficient period to ripen title up to it, and to permanently fix the line as so located.

The text in 8 Am. Jur. page 797, sec. 72, says: "It is well settled that where the boundary lines of adjoining land-owners are not *definitely* known or their location is in *dispute,* such owners may establish the lines either by a written or by a parol agreement; such boundary lines may also be established by their mutual recognition of, and acquiescence in, certain lines as the true boundary lines, the courts being reluctant to interfere therewith after the lines have been permitted to exist over such a period of time that satisfactory proof of the true lines is difficult." Section 73 on the same

page says in part: "Although there was in the early cases much doubt as to the validity or legal force of parol agreements and submissions to settle disputed boundary lines, it is now a well-settled principle of law that an *unascertained or disputed* boundary line dividing the lands of adjoining owners may be permanently and irrevocably established by a parol agreement of the adjoining owners." (Our italics.) Section 80 on page 802, in discussing the effects of acquiescence, in the location of the agreed line either by parol or in writing, says: "It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time—usually the time prescribed by the statute of limitations—they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. In other words, such recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line." The reader's attention is also called to an extensive annotation beginning on page 1430 of volume 69 A. L. R. on the subject of the "Establishment of boundary line by oral agreement or acquiescence," and especially to subdivision III of that annotation beginning on page 1433 of that volume and in which is a list of Kentucky cases filling two columns and which begins on page 1435, each and all of which are in accord with the inserted texts and our general statements hereinbefore made.

But defendant argues that there was never any agreed location of the dividing line between his tract and that of plaintiff. However, he admits the construction of the water gap and the erection of the wire fence, supra, at the places indicated and their practically continued existence throughout the period indicated, as well as his abandonment of the old passway used by his ancestors at the place where it was first located. Such peaceful acquiescence furnishes potent support for the conclusion that the location was pursuant to mutual agreement, and that presumption is also further fortified by the fact that the agreed upon location gave to each party the use of parts of the branch though the dividing line, as described in the title papers, was silent on that question. We feel that we have already consumed more time and space than the value of the sub-

ject matter of the litigation justifies, and will, therefore, pursue the discussion no farther.

Wherefore, for the reasons stated, the judgment is affirmed.