**Clifford E. MUDWILDER et al., Appellants,**

**v.**

**Thomas B. CLAXTON et al., Appellees.**

Court of Appeals of Kentucky.

March 1, 1957.

Rehearing Denied May 10, 1957.

———◆———

C. L. Bell, Louisville, for appellant.

H. J. Graham, Ralph Logan, Edward Dodd, Louisville, for appellees.

———◆———

S. J. Stallings, Glenn L. Schilling, Louisville, for appellants.

Hardy & Hardy, Ben B. Hardy, Louisville, for. appellees.

CAMMACK, Judge.

This action was instituted by the Claxtons, the appellees, to quiet title to a small lenticular strip of land near Jeffersontown, 546 feet long and 25 feet wide at its axis. Their assertion of title by adverse possession to the disputed strip was upheld in the trial court. The record owners of the strip, the Mudwilders, are appealing on the ground that the proof offered by the Claxtons was not sufficient to establish the elements of adverse possession; in particular, those of continuity of possession and claim of right.

The Mudwilders acquired their property in 1943. Most of it lay north of Rehl Road, but a narrow tract bordered the southern edge of the road. Immediately to the south of the southern record boundary of this tract is a large pasture, which is a part of a farm purchased by the Claxtons in 1937. Between the Rehl Road and the record line separating the small tract of the Mudwilders' land from the Claxton pasture, and roughly parallel to them, runs an old fence. That narrow strip between the old fence and Claxton's pasture is the property in controversy.

The case was referred to a Commissioner, who found that: (1) Claxton believed the old fence was the northern boundary of his land; (2) the fence was an ancient one, but was in fair condition and sufficient to hold any livestock pastured in Claxton's field, even though on occasions cattle did get through it and wander onto Rehl Road; and (3) Claxton used his field and the disputed strip adjoining it as pasture land, both for his own cattle and for cattle he pastured for others. At the time it was seen by the Commissioner, the strip was mostly overgrown with bushes, weeds and trees; but livestock kept in the Claxton pasture grazed and frequented portions of it. On at least one occasion Claxton had strung a single strand of barbed wire along the old fence line to retain his cattle. The Commissioner found further that the Mudwilders had made no use of the strip whatsoever, except occasionally to cut a tree

for Christmas. In 1950, Claxton learned that the old fence was not his true line, and from that time there was no question as to his adverse holding of the strip. However, the Commissioner did not feel that the facts showed that the Claxtons had intended prior to 1950 to hold to the fence regardless of whether or not it was the true boundary line, and recommended that the complaint be dismissed.

While the question of adverse holding is not a closed one, we agree with the trial judge that Claxton intended to and did hold to the fence even though it was not his record line. There is no question but that the old fence had stood in its present location for more than 40 years. It is not asserted that a fence, or any other artificial boundary, marked the record line. The possession of the Claxtons was adverse if they intended to hold to the fixed line regardless of where the true boundary ran; or were in a strong but erroneous belief that the boundary fixed by the fence was the true line. Marcum v. Noble, Ky., 242 S.W.2d 866. While there was no evidence to show that Claxton had read his deed, or had intended to claim to the fence only in the event it proved to be the true boundary, there was his testimony that he took possession of "everything inside the fence." The condition of the fence is relatively unimportant, so long as it is a well-marked boundary. See Newman v. Sharp, Ky., 248 S.W.2d 413. Claxton openly treated the property as his own, and utilized it continuously for the purposes for which the land was best suited—pasturing and timber-cutting.

We believe that Claxton's open use of the strip to a well-defined boundary for more than 15 years was shown and that it was coupled with an intent to claim to the old fence line. And also, that it was his firm conviction that the old fence was his true line. Accordingly, his possession ripened into title after the passage of 15 years.

Judgment affirmed.