**Hazel Clark Smith WALDEN, Appellant,**

v.

**Dexter BAKER et al., Appellees.**

Court of Appeals of Kentucky.

March 3, 1961.

J. K. Beasley, Harlan, for appellant.

H. M. Brock & Sons, James C. Brock, Harlan, for appellees.

STEWART, Judge.

This action was instituted by plaintiff, Hazel Clark Smith Walden, against defendants, Dexter Baker, his wife, Effie Baker, Ephriam Osborne and Nannie Simpson, to quiet title to the hereinafter mentioned property. Additionally, she asked for damages for being deprived of the use of a certain house and premises. She was decreed to have title to only that portion of the land in litigation on which the house sits. Also the trial court awarded her a three-foot easement from the front of the house to the street for ingress and egress. She was refused any damages.

On this motion for an appeal plaintiff renews her claim to ownership of the entire tract of land in dispute and further asserts damages for the rental value of the house and premises involved for the time she was denied their use. We shall herein refer to the parties as "plaintiff" and "defendant" or by their names.

On October 8, 1927, plaintiff and her first husband, Ike Smith, purchased property in Harlan County described as "Lots Nos. 1, 2, 3 & 4 in Block 3 of the Terries Fork Addition to Wallins Creek." The deed further recited that a map of these lots was of record in the Harlan County Clerk's office and that this was referred to for a more complete description of the lots. However, at the time of this lawsuit, no such map could be found. Ike Smith deeded his one-half undivided interest in these lots to plaintiff on March 12, 1941. On April 13, 1929, Ephriam Osborne bought a tract of land near plaintiff's property.

The property which is the subject of this lawsuit is a triangular-shaped lot, 50 feet wide and over 50 feet long, lying between the land owned by Hazel Clark Smith Walden and that owned by Ephriam Osborne. As stated by the special commissioner in his report, and the record appears to support such a finding: "It is impossible to determine with accuracy whether the disputed property was contained in plaintiff's conveyance or in defendant's." How-

ever this point is unimportant for the purpose of deciding the issue raised on this appeal.

In 1928 plaintiff fenced in the disputed ground and later refenced it along the same boundaries, although in recent years the fence has fallen into disrepair. She has paid the taxes on the property, has had a garden there every year and at first built a garage on the land. In 1949 she tore down the garage and erected a house in its place. While the house was being built, defendant, Osborne, protested that the structure projected onto his land, and plaintiff moved it back a foot. Plaintiff testified he then told her to go ahead with the building, and this statement was not contradicted. The house was completed and plaintiff rented it until late in 1955.

In 1955, acting upon the theory that the conveyance to him of date April 13, 1929, embraced the tract of land in controversy, defendant, Osborne, with his wife joining in, deeded the triangular-shaped strip to defendants, Dexter Baker and Effie Baker, his wife. The Bakers took over the property and placed defendant, Nannie Simpson, in the house as their tenant.

In February, 1956, plaintiff filed this suit alleging ownership of the property and asking $500 damages for trespass and for the immediate possession and control of the property. Ephriam Osborne, one of the defendants, counterclaimed averring he had title by deed to the property and seeking $1000 damages for certain acts on the part of appellant which he claimed changed the channel of a small branch that ran adjacent to the property and thereby caused the flow of water to destroy portions of a private roadway.

A special commissioner heard this case and the lower court thereafter held: (1) The deed to the Bakers was champertous and void, the conveyance being in violation of KRS 372.070(1); (2) the disputed land was owned by defendant, Osborne, according to his deed; (3) plaintiff was entitled to that part of the disputed premises

which is covered by the house she built thereon, together with the easement heretofore mentioned; and (4) neither party was allowed to recover the damages each sought.

We do not believe either plaintiff or defendant, Osborne, acquired title by deed to the disputed property. It is clear to us that neither deed expressly included it. However, even if it is conceded that defendant, Osborne, held title by deed to the property, it is our firm conviction that appellant's proof established her claim to the land by adverse possession.

Within a few months after she bought the property, she enclosed all the land she purchased, and also the disputed tract, with a fence. This fence has remained around the land (except for repairs) until fairly recent times. She put in a garden each year in the disputed area, built a garage on the tract, and later erected a house where the garage had been. From 1927 to 1955, a period of 28 years, she held this land against all comers. She thought it was her property and treated it as such. In fact, no one seems to have objected to her claim of ownership until defendant, Osborne, attempted to convey the land to the Bakers.

In Tartar v. Tucker, Ky., 280 S.W.2d 150, 153, we set forth this rule concerning the acquisition of land by adverse possession, which rule is altogether applicable to the facts of this case: "One may obtain title to lands by adverse use outside of the particular boundary of the deed, especially where the boundary is well defined * * *, when the adverse possession has existed for a period of 15 years."

In the recent case of Mudwilder v. Claxton, Ky., 301 S.W.2d 3, this Court held that where certain plaintiffs had openly used a strip of land for pasturing purposes to a fence, which marked a well-defined boundary, for more than 15 years, they had manifested an intent to claim to the fence line; and, moreover, where it was the firm con-

viction of these plaintiffs that the fence was the true boundary of their land, their possession of the strip ripened into title after the passage of 15 years even though the fence was not their boundary as shown of record.

Under the facts stated, and the law applicable thereto, the trial court's finding was clearly erroneous (See CR 52.01) when it concluded defendant, Osborne, had title by reason of his deed to the land in controversy. On the contrary, the evidence established beyond any doubt, even if his deed did embrace it, that plaintiff had acquired ownership of the property by adverse possession.

The lower court also committed error when it denied plaintiff damages on her claim for the wrongful taking over of her house and premises by defendants in February, 1956; the record does not indicate when control of it was restored to her. She testified she had rented the house and premises at first for $12 and later for $10 per month. These figures seem not to be in controversy.

Plaintiff's counsel conceded in his brief that whatever loss his client sustained by the seizure and detention of her property the withholding was of a temporary nature. Damages are sought upon the ground that a trespass was committed, and in such a case the recovery has almost invariably been measured by the reasonable rental value of the property for the period of time it was wrongfully withheld. See Edwards v. Lee's Adm'r, 265 Ky. 418, 96 S.W.2d 1028, 1030, and the cases cited therein on this principle. We believe that under the particular circumstances of this case the testimony as to the actual rental price charged the tenant established the reasonable rental value of the property for the period of time under consideration.

Wherefore, the motion for an appeal is sustained, the judgment is reversed and the case is remanded for proceedings consistent with this opinion.