**Sharon ELSEA and Harold Elsea, her Husband; Kenneth Eversole and Marsha Eversole, his Wife; and Angela Spicer, Appellants**

v.

**Fred DAY and Elsie Day, his Wife; and Other Interested Parties as listed on the Notice of Appeal, Appellees.**

No. 2012–CA–000662–MR.

Court of Appeals of Kentucky.

Feb. 28, 2014.

Discretionary Review Denied by Supreme Court Dec. 10, 2014.

Matthew L. Bowling, Hazard, KY, for appellants.

Leonard H. Brashear, Hyden, KY, Denise M. Davidson, Hazard, KY, for appellees.

Before CAPERTON, DIXON and VANMETER, Judges.

## OPINION

DIXON, Judge:

Appellants appeal from a judgment of the Perry Circuit Court finding that Appellees hold title to a disputed parcel of land. Although the sole issue in this matter concerns the proper boundary between the parties' properties, the specific dispute centers around whether the boundary is established by the calls in the parties' deeds, or whether there was sufficient evidence to establish adverse possession of the disputed parcel by Appellees. For the reasons set forth herein, we affirm the trial court.

The parties herein are adjacent land owners of property located in Krypton, Perry County, Kentucky. The parties stipulated to their respective chains of title as to both properties, as well as that the property in dispute can be traced to a common grantor. Appellants, Harold and Sharon Elsea, Kenneth and Marsha Eversole, and Angela Spicer, claim ownership of their property by inheritance from Sharon's father, James Eversole. Appellees, Fred and Elsea Day, the Napier heirs and the Duff heirs, claim ownership of their tract by conveyance from Floyd Napier.

In 2008, while Appellants were preparing to cut timber, a dispute arose concerning the boundary between the properties. Subsequently, on February 13, 2009, Appellants filed a quiet title action in the Perry Circuit Court. The trial court conducted a bench trial in January 2012, wherein both parties presented expert and lay witness testimony. Sharon Elsea testified that her father, James Eversole, acquired the property from his parents, App and Cassie Eversole. Elsea stated that neither she nor her predecessors in interest had ever lived on their property nor had any structures been erected on such. Elsea did recall the property having been augured and timbered.

Fred Day testified that he moved onto his property in the early 1970's. He thereafter contacted App Eversole regarding the boundary line between the respective properties. Day explained that App declared that a drain which ran between the properties to the top of the ridge was the boundary line. App had erected a fence on the left side of the drain and suggested that Day erect a fence on the right side of the drain and run said fence adjacent to App's fence up to the top of the ridge. Day further stated that after he erected a fence, he used his property up to the fence line for cattle and logging purposes. After App died and the property passed to James Eversole, Day and James continued to recognize the fence as the boundary line. Day commented that in all of the years he had lived on the property there had never been any disagreement with either App or James as to the boundary line between the respective properties. In fact, Day testified that it was not until 2008 when Appellants placed logging markers on trees located on his side of the fence that a dispute concerning the boundary line first arose. Fred's children and grandchildren similarly testified that the entire time they lived on the property, the fence was considered to be the boundary between the two properties.

Appellant's expert, Ralph Peters, a licensed land surveyor, testified that he conducted a survey based upon the calls in Appellants' deed. Peters stated that he found no overlap or dispute in the boundary line between the parties' tracts. In

fact, Peters testified that each deed called for the line of the other property so there could be no overlap. Peters did acknowledge that he located a fence on Appellants' property but that such was not continuous. Based upon his survey, Peters concluded that the disputed parcel, which he estimated to be approximately nine acres, was within Appellants' property as set forth in their deed.

Appellees' also retained a licensed surveyor, Curtis Whitaker, to conduct a survey of their property. Notably, however, Whitaker was called in Appellant's case-in-chief due to his opinion that based upon the deed calls alone, the respective properties did not overlap. Whitaker agreed with Peters that based upon the deed descriptions, the disputed property fell within Appellants' deed. However, Whitaker testified that he utilized parol evidence provided by Day concerning the boundary agreement with the Eversoles to conclude that the fence line was the correct boundary between the properties, thus placing the disputed tract in Appellees' possession.

Appellees also called Larry Keith, who had worked on a surveying crew for Nesbitt Engineering in the late 1970's. Keith testified that under the direction of Paul Nesbitt, he had surveyed the property in dispute some twenty-five years earlier. During his survey, Keith claimed that he had spoken with James Eversole and Day, who both acknowledged that the fence was the boundary between the respective properties. Further, Keith noted that he had walked the fence line, which at that time was continuous from a point on the lower portion of Appellees' property up to the top of the ridge, except for a portion that had been disturbed due to mining activities.

Finally, Joe Maggard, a master logger, testified that he had first logged Appellees'

property in the 1980's, at which time he confirmed with James Eversole that the proper boundary line was the fence. Maggard logged Appellees' property a second time in the 1990's and again logged up to the fence after speaking with James Eversole.

On March 8, 2012, the trial court entered findings of fact and conclusions of law finding:

[T]he Plaintiffs' predecessors in title, App Eversole and James Eversole, established the boundary line between the Eversole and Day property with Fred Day. That boundary line as established by App Eversole and Fred Day was the fence area running along the right side of the drain separating the Eversole and Day property. That this fence line was continuous up to the top of the ridge and was acknowledged by the Plaintiffs' predecessors in title and Fred Day as the property line from the early 1970's up until this dispute in 2008, for a period of more than 15 years.

. . .

[The Defendants have established ownership of the property based upon an agreed upon line by Plaintiffs' predecessors in title and the Defendant, Fred Day, as established by the lay witnesses, and the surveyors. That the Defendants have held the disputed property openly, notoriously, adversely, hostile and continuous as to the Plaintiffs for a period of more than 15 years and have established ownership by adverse possession.

The Court further concludes that the Plaintiffs have waived and now are estopped and have consented to the location of the properties and agreed to the location of said property by their predecessors in title.

Appellants thereafter appealed to this Court.

■ Our standard of review is governed by CR 52.01. *Croley v. Alsip*, 602 S.W.2d 418, 419 (Ky.1980) (CR 52.01 is applicable in boundary disputes.). When reviewing an action taken by a trial court without a jury, we may not reverse its findings of fact unless they were clearly erroneous. Clear error only occurs when there is not substantial evidence in the record to support the trial court's findings. *M.P.S. v. Cabinet for Human Res.*, 979 S.W.2d 114, 116 (Ky.App.1998). Substantial evidence is that which is "proof sufficient to induce conviction in the mind of a reasonable person." *Rearden v. Rearden*, 296 S.W.3d 438, 441 (Ky.App.2009). (Citation omitted).

Appellants first argue that the trial court erroneously found that Appellees established record, or legal, title in the disputed property. Appellants point out that the expert witnesses agreed that the calls in the parties' deeds did not overlap or encroach upon each other and the disputed area was clearly within Appellant's deed boundaries.

While we agree with Appellants that because record title is derived from a deed, they do in fact hold record title to the disputed property, we disagree that the trial court found otherwise. Rather, the trial court concluded that Appellees acquired ownership of the disputed property through adverse possession and further that Appellants were estopped from contesting the location of the boundary that was established through agreement between their predecessors in interest and Day.

■ Appellants next argue that the trial court erred in finding that Appellees established ownership of the disputed property through adverse possession. Appellants contend that at best, the testimony of Appellees' witnesses showed a permissive use granted to Appellees by Appellants' predecessor. As such, Appellants maintain that any possession of the disputed property by Appellees cannot be deemed hostile. We disagree.

■ Five elements must be satisfied before adverse possession will bar record title: "1) possession must be hostile and under a claim of right, 2) it must be actual, 3) it must be exclusive, 4) it must be continuous, and 5) it must be open and notorious." *Appalachian Regional Healthcare, Inc. v. Royal Crown Bottling Co.*, 824 S.W.2d 878, 880 (Ky.1992) (*citing Tartar v. Tucker*, 280 S.W.2d 150, 152 (Ky.1955)). Further, these common law elements of adverse possession must all be maintained for the statutory period of fifteen years, and it is the claimant's burden to prove them by clear and convincing evidence. *Moore v. Stills*, 307 S.W.3d 71, 78 (Ky.2010); *Commonwealth Dep't. of Parks v. Stephens*, 407 S.W.2d 711 (Ky. 1966).

Appellees sufficiently proved that their possession was actual, exclusive, continuous, and open and notorious. Furthermore, Appellants' argument that the hostility element is negated by permissive use is without merit. Appellants failed to present any evidence that either App or James gave Day permission to construct a fence on their property. Rather, the testimony simply established that App told Day the boundary line was the drain. Whether App actually knew his statement was erroneous is entirely unknown and, as such, we cannot conclude that he, or subsequently James, merely intended to grant permissive use of the disputed parcel.

The question necessarily becomes then, whether Appellees could adversely possess land they mistakenly thought was their own. We conclude that they could and

they did. "One may obtain a perfect title to real property by adverse possession for the statutory period of time of fifteen years even when there is no intention by the adverse possessor to claim land not belonging to him. KRS 413.010." *Appalachian Regional Healthcare, Inc.*, 824 S.W.2d at 879–80. In *Tartar v. Tucker*, 280 S.W.2d 150, 152 (Ky.1955), Kentucky's then-highest court held that "[a]dverse possession, even when held by mistake, may ripen into a prescriptive right after 15 years of such possession." The Court therein concluded that the claimant's intention is the controlling factor and where he takes possession under the "mistaken" belief that the land is his, and he evinces no intention of surrendering the disputed portion, he is holding adversely. *Id.* See also *Johnson v. Dobson*, 208 Ky. 401, 270 S.W. 815 (1925); *Carpenter v. Rose*, 186 Ky. 686, 217 S.W. 1009 (1920); *Heinrichs v. Polking*, 185 Ky. 433, 215 S.W. 179 (1919).

 As explained in 39 Am.Jur. Proof of Facts.2d 261 § 7 (2013):

It has been said that the intention with which possession is taken and maintained is the controlling factor in determining its adverse character. The question as to whether a claimant actually intended to adversely possess the property of another often arises in mistaken boundary line cases. In those and other similar situations, the general view is that the claimant must be able to show that he intended to possess the disputed property as his own against the owner and the world. He must also establish that he intended to appropriate the property to his own use to the exclusion of all others. [I]t is not necessary that the claimant intended to take away property that he knew belonged to another, since it is the claimant's intention to possess property as the owner there-

of, and not his intent to take irrespective of another's known right, which governs. (Citations omitted).

Physical improvements, such as fences, buildings, etc., are good indicators of a claimant's intent to hold property adversely. *Phillips v. Akers*, 103 S.W.3d 705 (Ky. App.2002). See also *Appalachian Regional Healthcare, Inc.*, 824 S.W.2d at 880 ("An intent to exercise dominion over land may be evidenced by the erection of physical improvements on the property.") In fact, a long-existing fence may serve as a well-defined boundary even if the property owner is mistaken as to the location of the true line and does not intend to claim property beyond the true boundary. A well-defined boundary may serve as notice of an adverse claim where the claimant was the only person who consistently attempted to exercise dominion over the property. *Walden v. Baker*, 343 S.W.2d 797, 799 (Ky.1961); *Mudwilder v. Claxton*, 301 S.W.2d 3, 4 (Ky.1957); *Turner v. Morgan*, 158 Ky. 511, 165 S.W. 684 (1914); *Johnson v. Kirk*, 648 S.W.2d 878, 879–80 (Ky.App.1983).

Herein, Day erected a fence along the drain running between the properties after being told by App that such was the proper boundary. He thereafter used the property up to the fence line to feed cattle and for logging purposes for nearly thirty years. It would seem to this Court that such conduct was a public pronouncement of hostility to the title of the real owner. Appellees remained in possession up to the fence line and must be deemed to have held adversely, even though their claim of title originated in a mistaken belief that the land was theirs.

 Furthermore, we agree with the trial court that Appellants are now estopped from contesting a boundary that was clearly established and recognized by Day and Appellants' predecessors in inter-

est for nearly thirty years. As observed in *Liberty Nat. Bank & Trust Co. v. Merchant's & Mfr.'s Paint Co.*, 307 Ky. 184, 191, 209 S.W.2d 828, 832 (1948):

In *Hotze v. Ring*, 273 Ky. 48, 115 S.W.2d 311, 313 [ (1938) ], we said: 'The text in 8 Am.Jr., page 797, § 72, says: 'It is well settled that where the boundary lines of adjoining landowners are not definitely known or their location is in dispute, such owners may establish the lines either by a written or by a parol agreement; such boundary lines may also be established by their mutual recognition of, and acquiescence in, certain lines as the true boundary lines, the courts being reluctant to interfere therewith after the lines have been permitted to exist over such a period of time that satisfactory proof of the true lines is difficult.' * * * 'It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time— usually the time prescribed by the statute of limitations—they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. In other words, such recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line.'

We conclude that the trial court properly found that Appellees established ownership of the disputed property not only through adverse possession but also by acquiescence of the parties and their predecessors in interest.

Finally, Appellants argue that the trial court erred in permitting Larry Keith to testify as an expert regarding the boundary of the disputed property because he was not a licensed surveyor at the time he surveyed the properties in the late 1970's. After Appellants objected to Keith's qualifications during the bench trial, the trial court permitted the testimony but directed the parties to brief the issue. On March 8, 2012, the trial court entered an order ruling that "Mr. Keith did in fact possess the knowledge and skill and did have the experience, training and education. Furthermore, his testimony met the requirements set forth in *Mitchell v. Commonwealth*, Ky., 908 S.W.2d 100 (1995)."

It is clear from Appellants' brief that their sole objection to Keith's testimony is that he was not a licensed surveyor at the time of the events that were the subject of his testimony. Although there appears to be no published Kentucky case law on this issue, other jurisdictions have concluded that a surveyor need not be licensed in that state to be qualified to testify as an expert witness. Rather, there must be a showing that the witness possesses sufficient knowledge, training or experience in the field in order to qualify. *See Howard v. Wills*, 77 Ohio App.3d 133, 601 N.E.2d 515, 520 (1991) (Fact that surveyor was not licensed in Ohio went only to the weight to be given to his testimony and not to his qualification as an expert witness.); *Thomas v. Olds*, 150 Vt. 634, 556 A.2d 62, 64 (1989) (Statute requiring licensing of surveyors "is aimed at protecting the public from the unauthorized practice of engineering; it is not meant to be used to keep properly qualified experts from testifying."); *Yoho v. Stack*, 373 Pa.Super. 77, 540 A.2d 307, 310 (1988) ("A witness will be qualified as an expert if he or she has any reasonable pretension to specialized knowledge on the subject under investigation. The standard does not mandate, however, that the witness need possess all the knowledge in his or her special field of activity in order to qualify."); *Cutro v.*

*Duffy,* 88 A.D.2d 1007, 451 N.Y.S.2d 937, 938 (N.Y.App.Div.1982) ("[A] surveyor is not required to be licensed in order to qualify as an expert witness as long as he possesses the requisite education and experience and is supervised by a licensed surveyor...."); *Koenig v. Skaggs,* 400 S.W.2d 63, 67 (Mo.1966). *See also* 12 Am. Jur.2d *Boundaries* § 108, p. 504, n.54.

 In Kentucky, the qualifications of an expert witness are governed by KRE 702 and 703, which vest the trial court with broad discretion to determine whether a witness is qualified to express an opinion in a matter which requires expert knowledge, skill, experience, training, or education. These rules require the trial court to determine if such expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 577–79 (Ky.2000). The fact that an expert is not licensed in this state may affect the weight to be given to his testimony, but it does not necessarily render him unqualified to testify as an expert witness. *See generally Fehr v. Fehr,* 284 S.W.3d 149, 154 (Ky.App.2008) ("It remains within the discretion of the trial court to determine whether an expert witness is qualified based on the witnesses' knowledge, skill, experience, training, and education. *KRE 702* and *703.* Although a license required by statute is relevant in the court's determination, a lack of a real estate appraiser's license or certification does not by itself render the testimony inadmissible.") We find this no different than a physician licensed in another state who testifies as an expert witness upon proper qualification but would not be permitted to engage in the practice of medicine within Kentucky. The giving of an expert opinion is distinct from the practice of a regulated profession.

Keith testified that he had received his education in surveying at Hazard Technical College and that following graduation he went to work for Nesbitt Engineering under the direction of Paul Nesbitt, a licensed land surveyor. In 2008, Keith went to work for Pine Branch Mining as chief of a surveying crew under the direction of Robert Ray, also a licensed land surveyor. Keith testified that he had worked on a surveying crew in some capacity since 1977. As Keith clearly established that he had more than thirty-five years of experience in surveying and marking boundary lines in Kentucky, we cannot conclude that the trial court abused its broad discretion in finding that he qualified under KRE 702 and 703 to provide expert testimony.

For the reasons set forth herein, the judgment of the Perry Circuit Court is affirmed.

ALL CONCUR.