RENDERED: SEPTEMBER 18, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000367-MR

ORPHA BISHOP                                                    APPELLANT

v.
APPEAL FROM OWEN CIRCUIT COURT
HONORABLE R. LESLIE KNIGHT, JUDGE
ACTION NO. 16-CI-00117

S.T. BROCK, CINDY BROCK, AND
JOE BROCK                                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, COMBS, AND MAZE, JUDGES.

ACREE, JUDGE: Orpha Bishop appeals the Owen Circuit Court's judgment finding that S.T. Brock, Cindy Brock, and Joe Brock (the Brocks) acquired a gravel road by adverse possession. Finding no error, we affirm.

## BACKGROUND

This appeal addresses a property line dispute between Bishop and the Brocks. Both landowners claim ownership of a gravel road that runs east to west into their respective properties. The road in question dead-ends at the Brocks' property and provides limited access to the Bishop property.

The Brocks bought their land in 1988, and their son has resided at the property since 1989. When the property was purchased, there was a cable strung across the entrance of the gravel road; in 1989, the Brocks replaced the cable with a metal gate. This gate remains on the property today and is closed and locked most of the time. Only the Brocks have the key to open the gate.

After living on the property for three years, the Brocks installed a bridge and culverts over a creek near the entrance of the gravel road, costing them around $10,000. The Brocks also maintained the integrity of the road by re-graveling it, grading it, cleaning it, and mowing around the area. The Brocks treated, and believed, the gravel road as part of their property.

On the other hand, the Bishops purchased their property in 1991, two years after the Brocks.[1] They primarily used their property for hunting.[2]

---

[1] Ted Bishop, Appellant's son, purchased the land. However, in 1995, Appellant acquired the property by deed from her son.

[2] The Bishops allowed all family members, and family friends, to hunt on the property, but only when accompanied by a Bishop family member.

Therefore, the Bishops seldom used the road and rarely maintained it. When they purchased their land in 1991, the bridge and culverts were already installed. After owning the property for four years, the Bishops drove the road to the Brocks' house and spoke about it directly with their neighbors. However, neither party gave the other permission to use the gravel road.

A controversy arose between the parties when Orpha Bishop attempted to sell her land. The potential owner wanted to verify legal access to the lower portion of the property by use of the gravel road. Therefore, Bishop hired a professional to survey the property.

The surveyor confirmed Bishop owned the property. He said the Brocks' deed description was to the south of the gravel road and that no part of their deed encompassed the gravel road. Upon physical review of the property, he believed the gravel driveway, then in use, moved from its original location and was now "more into the Bishops' property." Therefore, the entire gravel road was now situated within Bishop's property lines. The Brocks contested this ownership, believing then, and arguing, that they had acquired the gravel road by adverse possession.

This led Bishop to file a petition for declaratory judgment, seeking a judicial determination of legal ownership. The circuit court held a bench trial on November 20, 2017. After hearing testimony, the circuit court found the disputed

road belongs to the Brocks because Bishop did not provide evidence she took any act to interrupt the Brocks' possession of the road. This appeal followed.

## STANDARD OF REVIEW

Our review of a circuit court's findings of fact following a bench trial is to determine whether those findings are clearly erroneous. CR[3] 52.01. This rule applies with equal force to matters involving boundary disputes. *Croley v. Alsip*, 602 S.W.2d 418, 419 (Ky. 1980). Factual findings are clearly erroneous if unsupported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence is defined as "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Natural Resources and Environmental Protection Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citations omitted).

Our role as a reviewing court prohibits us from disturbing the circuit court's factual findings that are supported by substantial evidence, despite whether we would have reached a contrary conclusion. *Moore*, 110 S.W.3d at 354. We defer to a significant degree to the circuit court, for it had the opportunity to observe, scrutinize, and assess the credibility of witnesses. CR 52.01. Notwithstanding the deference due the circuit court's factual findings, its

---

[3] Kentucky Rules of Civil Procedure.

conclusions of law, reached after making its findings, are reviewed *de novo*.

*Hoskins v. Beatty*, 343 S.W.3d 639, 641 (Ky. App. 2011).

## ANALYSIS

Five elements must be satisfied before adverse possession will bar record title: "1) possession must be hostile and under a claim of right, 2) it must be actual, 3) it must be exclusive, 4) it must be continuous, and 5) it must be open and notorious." *Appalachian Regional Healthcare, Inc. v. Royal Crown Bottling Co., Inc.*, 824 S.W.2d 878, 880 (Ky. 1992) (citing KRS[4] 413.010; *Tartar v. Tucker*, 280 S.W.2d 150, 152 (Ky. 1955)). Further, "[t]hese common law elements of adverse possession must all be maintained for the statutory period of fifteen years, and it is the claimant's burden to prove them by clear and convincing evidence." *Moore v. Stills*, 307 S.W.3d 71, 77-78 (Ky. 2010) (citations omitted).

Here, the question becomes whether the Brocks could adversely possess land they mistakenly thought was their own. We conclude that they could, and they did.

"One may obtain a perfect title to real property by adverse possession for the statutory period of time of fifteen years even when there is no intention by the adverse possessor to claim land not belonging to him." *Appalachian Regional Healthcare, Inc.*, 824 S.W.2d at 879-80 (citing KRS 413.010; *Tartar*, 280 S.W.2d

---

[4] Kentucky Revised Statutes.

at 152).  In *Tartar v. Tucker*, Kentucky's then-highest Court held that "[a]dverse possession, even when held by mistake, may ripen into a prescriptive right after 15 years of such possession."  280 S.W.2d at 152.  The Court therein concluded that the claimant's intention is the controlling factor and where he takes possession under the "mistaken" belief that the land is his, and he evinces no intention of surrendering the disputed portion, he is holding adversely. *Id.*; *see also Johnson v. Dobson*, 208 Ky. 401, 270 S.W. 815 (1925); *Carpenter v. Rose*, 186 Ky. 686, 217 S.W. 1009 (1920); *Heinrichs v. Polking*, 185 Ky. 433, 215 S.W. 179 (1919).

> As explained in *Elsea v. Day*, 448 S.W.3d 259, 264 (Ky. App. 2014):
>
> It has been said that the intention with which possession is taken and maintained is the controlling factor in determining its adverse character.  The question as to whether a claimant actually intended to adversely possess the property of another often arises in mistaken boundary line cases.  In those and other similar situations, the general view is that the claimant must be able to show that he intended to possess the disputed property as his own against the owner and the world.  He must also establish that he intended to appropriate the property to his own use to the exclusion of all others.  [I]t is not necessary that the claimant intended to take away property that he knew belonged to another, since it is the claimant's intention to possess property as the owner thereof, and not his intent to take irrespective of another's known right, which governs.

(Quoting 39 Am. Jur. Proof of Facts 2d, page 261, § 7 (2013).)  Physical improvements, such as fences, buildings, and the like, are good indicators of a claimant's intent to hold property adversely.  *Phillips v. Akers*, 103 S.W.3d 705,

708 (Ky. App. 2002); *see also Appalachian Regional Healthcare, Inc.*, 824 S.W.2d at 880 (citation omitted) ("An intent to exercise dominion over land may be evidenced by the erection of physical improvements on the property."). In fact, a long-existing fence may serve as a well-defined boundary even if the property owner is mistaken as to the location of the true line and does not intend to claim property beyond the true boundary. A well-defined boundary may serve as notice of an adverse claim where the claimant was the only person who consistently attempted to exercise dominion over the property. *Walden v. Baker*, 343 S.W.2d 797, 798-99 (Ky. 1961); *Mudwilder v. Claxton*, 301 S.W.2d 3, 4 (Ky. 1957); *Turner v. Morgan*, 158 Ky. 511, 165 S.W. 684, 684-85 (1914); *Johnson v. Kirk*, 648 S.W.2d 878, 879-80 (Ky. App. 1983).

Here, the Brocks constructed a gate with a lock that the circuit court found was locked at least some of the time. This road was primarily used, for years, as a driveway. The Bishops even followed the road straight to the Brocks' residence. Additionally, the Brocks made significant improvements on the land by adding the bridge and culverts and maintaining the road. All this demonstrates an "openly evince[d] purpose to hold dominion over the property with such hostility [to] give the non-possessory owner notice of the adverse claim." *Vick v. Elliot*, 422 S.W.3d 277, 280 (Ky. App. 2013) (internal quotation marks and citation omitted). This open and notorious possession went on for over fifteen years.

The circuit court could not find any evidence that the Brocks intended to surrender the disputed portion or that the Bishops attempted to halt their use. From the testimony, Bishop and her guests only used a small portion of the road. This limited use is not enough to establish possession. *Id.* That conduct has the ring of a public pronouncement of hostility to the title of the real owner. The Brocks remained in possession and must be deemed to have held the land adversely, even though their claim of title originated in a mistaken belief that the land was theirs.

In *Hotze v. Ring*, 273 Ky. 48, 115 S.W.2d 311, 313 (1938), our highest Court quoted the text in 8 Am. Jur., page 797, § 72, which states:

> It is well settled that where the boundary lines of adjoining land-owners are not *definitely* known or their location is in *dispute*, such owners may establish the lines either by a written or by a parol agreement; such boundary lines may also be established by their mutual recognition of, and acquiescence in, certain [lines] as the true boundary lines, the courts being reluctant to interfere therewith after the lines have been permitted to exist over such a period of time that satisfactory proof of the true lines is difficult.

It is well-established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time – usually the time prescribed by the statute of limitations – they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. "In other words, such recognition

of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line." *Elsea*, 448 S.W.3d at 265 (citation omitted).

We conclude that the circuit court properly found the Brocks established ownership of the disputed property by adverse possession.

## CONCLUSION

For the foregoing reasons, we affirm the Owen Circuit Court's December 6, 2018 order finding the Brocks possessed the gravel road by adverse possession.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| Ruth H. Baxter<br>Carrollton, Kentucky | Stephen P. Huddleston<br>Warsaw, Kentucky |