RENDERED: SEPTEMBER 19, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0559-MR

THOMAS MOORHEAD; CONNIE
MOORHEAD; AND EDWARD PETE
VANHORN                                                          APPELLANTS


APPEAL FROM LAWRENCE CIRCUIT COURT
v.          HONORABLE JOHN K. HOLBROOK, JUDGE
ACTION NO. 19-CI-00237


JERRY RICHARDS; LAURA JANE
PHELPS; AND VICKI RICHARDS                              APPELLEES

AND

NO. 2024-CA-0686-MR


JERRY RICHARDS AND VICKI
RICHARDS                                                    CROSS-APPELLANTS


CROSS-APPEAL FROM LAWRENCE CIRCUIT COURT
v.          HONORABLE JOHN K. HOLBROOK, JUDGE
ACTION NO. 19-CI-00237


THOMAS MOORHEAD; CONNIE
MOORHEAD; EDWARD PETE

VANHORN; AND LAURA JANE
PHELPS                                         CROSS-APPELLEES

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

\*\* \*\* \*\* \*\* \*\*

BEFORE:  ACREE, EASTON, AND L. JONES, JUDGES.

JONES, L., JUDGE:  These appeals, considered together, involve a boundary dispute and timber.  Thomas and Connie Moorhead hired logger Pete Vanhorn to cut trees on approximately seventeen acres of disputed land.  Jerry and Vicki Richards at all times claimed ownership of the land and filed the underlying lawsuit after the logging occurred, claiming trespass and violation of KRS[1] 364.130.  The Moorheads countersued, claiming they were the rightful owners of the property either by deed or by adverse possession.  The trial court ultimately found the land belonged to the Richardses, but declined to award treble damages and legal costs under KRS 364.130, finding the Moorheads had color of title.  For the reasons stated herein, we affirm in part, reverse in part, and remand for additional proceedings related to damages and costs.

---

[1] Kentucky Revised Statute.

## Factual and Procedural Background

Jerry and Vicki Richards purchased land in Lawrence County in 1993. Although they live in Ohio, the Richardses frequently visited the property. Connie Moorhead's family has owned at least three parcels[2] of land, adjacent to the Richardses' for several generations; and Connie was deeded an additional parcel in 2018. After receiving the property, the Moorheads sought to log it and hired Pete Vanhorn for that purpose. The Moorheads went to the Richardses, who claimed ownership and did not agree to the logging. Vanhorn suggested the Moorheads get a land survey before he logged the disputed area. The Moorheads reached out to the Richardses to ask if they would pay for half of the cost of the survey and they refused. The Moorheads hired surveyor Chris Slone. Slone conducted a partial survey of approximately 600 linear feet and placed four pins in the ground to mark what he believed was the boundary between the Richardses' and Moorheads' properties. The area the Moorheads wished to log was within what Slone determined was their property, so Vanhorn began cutting and removing trees. In response, the Richardses filed the underlying lawsuit.

The Richardses hired professional surveyor Bart Flaugher. Flaugher testified that, although he was not able to survey the Richardses' property based on

---

[2] It is undisputed that one of the parcels was sold to a third party and is not at issue in the instant action.

the deed description alone, he obtained the deeds for the surrounding properties and worked backward using all of the deed descriptions, including that of the Moorheads. Flaugher determined the seventeen-acre parcel that was logged by the Moorheads belonged to the Richardses. He testified that he located Slone's pins during his survey and did not agree with the placement. Prior to the bench trial, Flaugher was disclosed as an expert witness and the Moorheads did not object. Connie and Thomas Moorhead also testified, as did Jerry Richards and Pete Vanhorn. Chris Slone, who performed the partial survey for the Moorheads, did not testify. There was no direct evidence submitted regarding stumpage.[3] Rather, Vanhorn explained that the Moorheads were to receive one-third of the total amount received at market for the logs and Vanhorn would receive two-thirds based on his labor.

The trial court entered findings of fact and conclusions of law in which it ruled the property at issue belonged to the Richardses. The trial court relied on the testimony and survey of Flaugher, which it found to be more reliable than the testimony of the Moorheads, who both stated the property boundary as they knew it primarily came from what Connie's family had indicated over the years. The trial court rejected the Moorheads' argument regarding adverse

---

[3] *Stumpage* is defined as "1. The timber standing on land. 2. The value of the standing timber. 3. A license to cut the timber. 4. The fee paid for the right to cut the timber." BLACK'S LAW DICTIONARY (12th ed. 2024).

possession, reasoning that, even though Connie's family may have used the disputed area in the past for cows, it had not been used as such in years, and the fact that a barbed wire fence was still running through trees in the area did not enable her to "tack on" to the prior owners' use. The trial court awarded the Richardses the full market value of the logs, or $11,707.89, but declined to award treble damages due to lack of evidence of stumpage.

The Moorheads filed a motion to alter, amend, or vacate the judgment. They took issue with the trial court's reliance on Flaugher's survey and testimony. The trial court heard the motion and arranged to visit the properties with counsel for the parties. The court entered amended findings of fact and conclusions of law, but did not substantively change its original order. The Richardses then filed a motion for costs, attorney's fees, and prejudgment interest. The Moorheads continued to argue they had color of title based on the description in their deed and therefore were not responsible for paying treble damages, costs, or attorney's fees. The trial court ultimately agreed with the Moorheads and reduced the amount of damages awarded to the Richardses to $3,902.63 (*i.e.,* one-third of the original amount) and declined to award costs or attorney's fees. Both parties appealed.

**Standard of Review**

As indicated herein, the Moorheads' first argument is unpreserved and we therefore review only for palpable error. *Ford v. Commonwealth*, 628 S.W.3d

147, 155 (Ky. 2021); CR[4] 61.02. Relief can be granted only upon a showing of manifest injustice as a result of the error. *Id.* "Manifest injustice is error [that] so seriously affect[s] the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable." *W.H.J. v. J.N.W.*, 705 S.W.3d 55, 59 (Ky. App. 2024) (internal quotation marks and citation omitted)

> With regard to the other arguments raised by the parties on appeal,
>
> [t]he appropriate standard for the review of the [trial] court's findings is not to reverse unless they are clearly erroneous. In order for us to reverse, there must be no substantial evidence to support the trial court's ruling. *Croley v. Alsip*, 602 S.W.2d 418 (Ky. 1980). If believed to support the respective positions, the findings of the trial judge are not clearly erroneous. *Hensley v. Stinson*, 287 S.W.2d 593 (Ky. App. 1956). Matters of law are reviewed *de novo. Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011).

*Penix v. Delong*, 473 S.W.3d 609, 612 (Ky. 2015).

## Analysis

We begin by addressing the Moorheads' arguments. They first contend that the trial court erred by relying on the survey performed by Flaugher because the trial court failed to consider KRE[5] 702 relating to expert testimony, and the trial court's judgment was not based upon substantial evidence of record.

---

[4] Kentucky Rule of Civil Procedure.

[5] Kentucky Rule of Evidence.

This allegation of error is unpreserved. In contravention of RAP[6] 32(A)(4), the Moorheads fail to indicate where in the record the argument is preserved. For that reason alone, we may treat it as unpreserved. *Ford*, 628 S.W.3d at 155. Further, careful review of both the written and video record before us shows the Moorheads never contested Flaugher's qualification as an expert witness pursuant to KRE 702 to the trial court.[7] In fact, when the trial court heard argument on February 22, 2024, counsel for the Moorheads did not argue that Flaugher did not qualify as an expert in his field (*i.e.*, surveying), rather they asserted that his opinion *in this matter* should not be considered an expert opinion. The Moorheads argued Flaugher's survey was "just a drawing" and that the case should be boiled down to

---

[6] Kentucky Rule of Appellate Procedure.

[7] KRE 702 provides

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the proponent demonstrates to the court that it is more likely than not that:
>
> > (1) The testimony is based upon sufficient facts or data;
> >
> > (2) The testimony is the product of reliable principles and methods; and
> >
> > (3) The witness' opinion reflects a reliable application of the principles and methods to the facts of the case.

"lay people discussing where they believed the boundaries to be." KRE 702 was not raised at any point.

The Richardses had disclosed Flaugher as an expert witness prior to trial with no objection from the Moorheads. Nor did the Moorheads request a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), regarding the reliability of Flaugher's methods.[8] Once the trial was underway, counsel for the Richardses spent a good deal of time eliciting testimony from Flaugher regarding his training, experience, and employment before continuing to substantive questioning. Although the Moorheads did not call their surveyor as a witness to counter Flaugher, they thoroughly cross-examined Flaugher regarding his methods and the survey he ultimately produced on behalf of the Richardses. There was no objection to entry of Flaugher's survey into the record. Though there was no formal request during the trial for the court to accept Flaugher as an expert, there was no objection either. "[T]he decision to qualify a witness as an expert rests in the sound discretion of the trial court." *McGuire v. Commonwealth*, 595 S.W. 3d 90, 95(Ky. 2019) (citation omitted). This was a bench trial, and extensive testimony was given concerning Flaugher's qualifications and experience. "Based upon this background, we cannot say the

---

[8] "[T]he failure to conduct a *Daubert* review does not amount to palpable error[.]" *Davis v. Commonwealth*, 147 S.W.3d 709, 728 (Ky. 2004) (citation omitted).

trial court's failure formally to qualify [Flaugher] as an expert witness before allowing him to offer the testimony at issue created a probability of a different result or error so fundamental as to threaten [the Moorheads'] entitlement to [a fair trial]." *Id.* (internal quotation marks and citations omitted). The trial court clearly found Flaugher's methods reliable and his testimony credible. Based on the record before us, there was no manifest injustice and, therefore, no palpable error.

We next turn to whether the Moorheads have color of title. This argument is tied to their assertion that they had claim to the disputed property by adverse possession, but it is also tied to the Richardses' arguments on appeal. The Richardses contend that the trial court erred by finding the Moorheads had color of title with regard to KRS 364.130.

To have color of title does not mean a person has title in fact, but rather, the appearance of title. *Meece v. Feldman Lumber Co.*, 290 S.W.3d 631, 633 (Ky. 2009). The trial court did not address color of title in the context of the Moorheads' adverse possession claim, although it did acknowledge it as a factor. Rather, the trial court found the Moorheads did not establish the other factors necessary for adverse possession. The trial court correctly found that "[f]ive elements must be satisfied before adverse possession will bar record title: 1) possession must be hostile and under a claim of right, 2) it must be actual, 3) it must be exclusive, 4) it must be continuous, and 5) it must be open and notorious."

*Elsea v. Day*, 448 S.W.3d 259, 263 (Ky. App. 2014) (internal quotation marks and citations omitted). Each element must be maintained for a minimum of fifteen years and must be proven by clear and convincing evidence. *Id.*

The Moorheads looked to a barbed wire fence they claimed was erected by Connie's family approximately 100 years ago marking the true boundary between the properties. They could not specifically say who built the fence or when. Although it remains, the fence is deeply embedded in trees. The Moorheads had not maintained the fence or installed a new one since they acquired the property, and they did not present any evidence that the Richardses knew of or were made aware that the Moorheads considered the fence to be the boundary between the properties. There was testimony that at some point in the past, the fence had been used to contain cattle by Connie's family, but no dates were given. The trial court found the fence had not been used in many years, and certainly not since the Moorheads acquired the property in 2018. We agree with the trial court that the necessary elements of adverse possession were not satisfied by the Moorheads by clear and convincing evidence.

We next address whether the Moorheads had color of title in regard to KRS 364.130. The statute provides, in relevant part:

> (1) Except as provided in subsections (2) and (4)[9] of this section, any person, regardless of state of mind or

---

[9] It is undisputed that KRS 364.130(2) and (4) are not applicable in the instant action.

> whether the person believes to be authorized or not, who cuts or saws down, or causes to be cut or sawed down to convert to his own use timber growing upon the land of another without legal right or without color of title in himself to the timber or to the land upon which the timber was growing shall pay to the rightful owner of the timber three (3) times the stumpage value of the timber and shall pay to the rightful owner of the property three (3) times the cost of any damages to the property as well as any legal costs incurred by the owner of the timber.

*Id.*

From 1994 until 2017, the statute required a showing that the person cutting the timber did so with the intent to convert it to his/her use. *See Penix*, 473 S.W.3d at 613-14. However, the statute now indicates that an award of treble damages is possible "regardless of state of mind or whether the person believes to be authorized or not" *unless* the person has legal right or color of title. In its initial order and again in its first amended order, the trial court found the Richardses were not entitled to treble damages because they did not produce evidence of stumpage, but awarded them the full market value of the timber. However, in its second amended order, the trial court was persuaded by the Moorheads' argument that they had color of title pursuant to their deed, and the trial court reduced the amount of damages awarded to the Richardses. We do not agree with the trial court that the Moorheads presented clear and convincing evidence of color of title and therefore reverse the trial court on that issue.

-11-

At trial Connie testified her understanding of the boundaries of her property came solely from what she was told by her family over the years. This included the barbed wire fence that she testified was at least 100 years old. She testified that Slone's survey—albeit only partial—followed the barbed wire fence line. At no point in her testimony did Connie state she relied on the deed description for her understanding of the property boundary or that she ever referred to the deed prior to logging.

Thomas Moorhead also testified at trial. Over the objection of the Richardses, the trial court permitted Thomas to mark on Flaugher's survey where he believed the boundaries of the Moorhead property to be as the deed description was read aloud. The effect was that Thomas was seemingly able to understand the property boundary based solely upon the description contained in the deed. However, his testimony did not hold up on cross-examination. Counsel for the Richardses referred back to Thomas's deposition, taken on July 20, 2023. To wit:

Q: Okay, and how do you know that it's your property?

A: By a survey that was done.

Q: Okay. So you were relying on the survey that was done by Chris Slone?

A: Correct.

Q: Okay. And tell me where do you believe that the boundary line is on your property?

-12-

A: Where the survey was done at.

Q: Okay. Is there a fence there, I believe?

A: Yes.

Q: Okay. Does the deed to your property, in the deed description, does it mention a fence?

A: I'm not for sure.

Q: Well, did you look at the deed before you started logging the property?

A: Yes.

Q: Okay. And when [you] looked at the deed, how were you able to determine from your deed that the fence was the boundary line?

A: I didn't determine that; the surveyor did.

Thomas admitted on cross-examination that the word "fence" does not appear in his deed description and that he does not know where the boundary line is from reading the deed; rather, his understanding comes only from the partial survey conducted by Chris Slone and what Connie's family indicated over the years.

In finding that the disputed property belonged to the Richardses based on the survey conducted by Flaugher, the trial court acknowledged the limitations

of the descriptions contained in the deeds of *both* parties.[10]  We agree.  However, the trial court then found:

> [r]econsidering [the Moorheads'] argument, the Court finds that the [Moorheads] had objective color of title based upon their deed and the deed description which provided adequate information for Mr. Slone to conduct his partial survey.  Because the [Moorheads'] deed contains an adequate description with identifiable historical markers which (relying upon) their surveyor placed four survey stakes purporting to be the boundary line with the [Richardses'] property.

Unfortunately, we do not know what information Slone relied on to conduct his partial survey because he did not testify.  He could have relied on the deed, the existence of the fence, the understanding of the Moorheads, some combination of sources, or other information.  There simply was no evidence in that regard.  We disagree with the trial court that the deed can be so limited as to prevent determination of the boundary line while at the same time be sufficient to afford color of title.  "When there is uncertainty as to whether the description embraces the land in question, the claim of color of title fails." *Meece*, 290 S.W.3d at 636.  The evidence at trial shows the Moorheads relied on the survey performed by Slone, rather than the deed, for their claim to the disputed property.  "A bare survey does not give color of title[.]" *Holcomb v. Swift Coal & Timber Co.*, 65

---

[10] *See* Second Amended Findings of Fact, Conclusions of Law, and Judgment, section III.

-14-

S.W.2d 741, 744 (Ky. 1933). We therefore reverse the trial court's finding that the Moorheads had color of title pursuant to KRS 364.130.

It is undisputed that KRS 364.130(2) and (4) are inapplicable to the instant action. Therefore, the Richardses are entitled to treble damages and legal costs pursuant to the statute. With regard to damages, the only evidence provided of stumpage was that the Moorheads received one-third of the total market value of the logs, which was $3,902.63 (the other two-thirds being for labor and other services related to the logging and processing of the timber). Although the Richardses question the trial court's calculations, they failed to provide any other evidence. Treble damages equal $11,707.89, which is what the trial court initially ordered as the full market value. In other words, the trial court's initial order regarding damages was correct, but for different reasons.

The Richardses also seek $67,113.23 in attorney's fees and costs. The trial court declined any award because it found the Moorheads possessed color of title. Because we conclude the Moorheads did not possess color of title, the Richardses are entitled to "legal costs" as well as treble damages. KRS 364.130 (1). On remand, the trial court must make a determination of reasonable attorney's fees and costs. The Moorheads argued below that amount of attorney's fees requested was extremely high and unreasonable. The trial court must consider the

arguments of both parties in this regard. As explained in *Dingus v. FADA Service Company, Inc.*, 856 S.W.2d 45 (Ky. App. 1993):

> The dispute over the amount of the fees is a matter within the sound discretion of the trial court. Reasonableness of an attorney fee must encompass the time involved, the task assigned, and the degree of difficulty of the work under the circumstances. Reasonableness of attorney's fee is for the trial court to determine, subject only to the abuse of discretion.

*Id*. at 50.

## Conclusion

For the foregoing reasons, the judgment of the Lawrence Circuit Court is affirmed in part, reversed in part, and remanded for further proceedings related to damages and legal costs pursuant to KRS 364.130.

ALL CONCUR.

| BRIEFS FOR APPELLANTS/CROSS-APPELLEES: | BRIEFS FOR APPELLEES/CROSS-APPELLANTS: |
|---|---|
| Don A. Bailey[11]<br>Louisa, Kentucky | Laura Jane McIlvoy<br>Lexington, Kentucky |

---

[11] This Court entered an order on January 7, 2025, granting Don A. Bailey's motion to withdraw as counsel for the Moorheads. The Moorheads were given thirty (30) days to find additional counsel, but no other attorney entered an appearance in this Court. Although Mr. Bailey filed briefs prior to withdrawing, the Moorheads have been proceeding *pro se* since January 7, 2025.